**B & L ASPHALT INDUSTRIES, INC.**

v.

**John FUSCO and Sylvie Fusco, his wife, and Gary Fusco, Individually and t/d/b/a Somerfield Paving, Inc.**

**Appeal of John Fusco and Sylvie Fusco.**

Superior Court of Pennsylvania.

Submitted Feb. 7, 2000.

Filed May 11, 2000.

William M. Panella, New Castle, for appellants.

Joseph J. Kearney, New Castle, for appellee.

Before McEWEN, President Judge, and POPOVICH and TAMILIA, JJ.

POPOVICH, J.:

¶ 1 This is an appeal from the judgment entered in the Court of Common Pleas of Lawrence County on August 31 1999, following denial of appellants' motion for judgment notwithstanding the verdict and motion for a new trial. This timely appeal followed. Upon review, we affirm in part, vacate in part and remand for new trial.

■ ¶ 2 Herein, appellants ask the following:

I. Should the court have granted [appellants'] non-suit and/or directed verdict and was the court's denial based on error of law?

II. Did an agency exist between Gary Fusco and John Fusco?

III. Is there equitable estoppel?

IV. Was the court in error in arriving at the inference that [appellee] had difficulty to recognize who he was dealing with because of interplay or "integrally" linked?

Appellant's brief, at 3.[1]

■ ¶ 3 When reviewing a denial of judgment notwithstanding the verdict,

---

1. Although appellants challenge the trial court's denial of both their motions for a non-suit and directed verdict, we find this issue waived. Appellants failed to raise either of these issues in their motion for post-trial relief. *See* Pa.R.Civ.P. 227.1(b); *see also Puleo v. Thomas*, 425 Pa.Super. 285, 624 A.2d 1075, 1077 (1993)(failure to raise an issue in post-trial motions or exceptions generally results in waiver of that issue for purposes of appel- late review). Instead, appellants' motion for post-trial relief requested a judgment notwithstanding the verdict and, in the alternative, for a new trial. Since appellants appealed from the denial of their post-trial motions, we will treat the present appeal as a challenge to the denial of appellants' motions for a judgment notwithstanding the verdict and a new trial.

an appellate court must decide whether there was sufficient evidence to sustain the verdict; our scope of review is very narrow: all evidence and all reasonable inferences drawn therefrom must be considered in the light most favorable to the verdict winner. Judgment notwithstanding the verdict can be entered only if the movant is entitled to judgment as a matter of law or if evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case.

*Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa.Super.1999) (citations omitted throughout).

■ ¶ 4 When assessing the trial court's denial of a motion for new trial, we apply a deferential standard of review. "The decision whether to grant or deny a new trial is one that lies within the discretion of the trial court." *Turney Media Fuel, Inc. v. Toll Bros., Inc.*, 725 A.2d 836, 841 (Pa.Super.1999). We will not overturn such a decision unless the trial court grossly abused its discretion or committed an error of law that controlled the outcome of the case. *Id.* (citation omitted). "Upon review, the test is not whether this Court would have reached the same result on the evidence presented, but, rather, after due consideration of the evidence found credible by the trial court, and viewing the evidence in the light most favorable to the verdict winner, whether the court could reasonably have reached its conclusion." *Id.*

¶ 5 Applying the foregoing standards, the record reveals the following: Gary Fusco was the sole proprietor of Sommerfield Paving Company that engaged in the business of asphalt paving. In forming Sommerfield Paving Company ("Sommerfield Paving"), Gary Fusco borrowed the necessary paving equipment from Som-

merfield Enterprises, Inc., which was a business owned by Gary Fusco's parents, appellant John Fusco and appellant Sylvie Fusco. At one time, Sommerfield Enterprises, Inc. was engaged in the asphalt paving business. Gary Fusco testified that the offices of Sommerfield Paving were located at his home. The offices of Sommerfield Enterprises, Inc. were located in Westgate Plaza. Appellant John Fusco performed the bookkeeping, administered the payroll and prepared the taxes for Sommerfield Paving. Moreover, Gary Fusco gave appellant John Fusco the authority to sign checks on behalf of Sommerfield Paving. In turn, appellant John Fusco issued checks on behalf of Sommerfield Paving for the payment of bills and the purchase of materials from various vendors, including appellee. However, appellant John Fusco did not receive payment for his services performed for Sommerfield Paving. In addition, neither appellant had any ownership interest in Sommerfield Paving.

¶ 6 Prior to the formation of Sommerfield Paving, appellant John Fusco regularly purchased material on behalf of Sommerfield Enterprises, Inc. from appellee and became a reliable customer of appellee's. In fact, the president of appellee, Lindy Ferraro, was a social acquaintance of appellant John Fusco. After the formation of Sommerfield Paving, appellee became one of the vendors from whom Sommerfield Paving purchased material. Mr. Ferraro testified that when appellee began selling material to Sommerfield Paving, he dealt only with appellant John Fusco who asked Mr. Ferraro to extend credit to Sommerfield Paving. Mr. Ferraro further testified that, with regard to the money owed by Sommerfield Paving, Mr. Ferraro spoke with Gary Fusco and appellants. On direct examination by appellee's counsel, appellant John Fusco's unchallenged testimony described one of these conversations with Mr. Ferraro as follows:

John Fusco: [Mr. Ferraro] came to my home. Do you want to know the conversation?

Appellee's counsel: Yes.

John Fusco: [Mr. Ferraro] wanted to know when Gary was going to pay the bill or if I could help him pay the bill, and I told him I only can pay you whatever Gary tells me to pay you, but I will never pay the bill personally from my corporation, because it wasn't my bill. He extended a credit, and I said he has to pay it.

(N.T. 9/6/96, at 47). The present case arose out of delinquent payments owed by Sommerfield Paving to appellee for purchases based primarily on credit.

¶ 7 In its collection efforts, appellee employed the services of Justine Ferraro Kearney who was in charge of appellee's billing. Ms. Kearney testified that on many occasions, the payment received by appellee was simply designated as being from "Sommerfield" and did not specify as being from Sommerfield Paving or Sommerfield Enterprises, Inc. Starting in September of 1990, Ms. Kearney began attempting to contact Gary Fusco in an effort to set up a meeting to discuss his delinquent payments. Ms. Kearney testified that she was unaware that the offices of Sommerfield Paving were located in Gary Fusco's home. Instead, Ms. Kearney directed her communications to the offices of Sommerfield Enterprises, Inc. in Westgate Plaza, since Ms. Kearney believed this to be Sommerfield Paving's offices. Ms. Kearney testified that in late December, she returned a telephone call received from the offices of Westgate Plaza. Upon returning this phone call, Ms. Kearney testified that a secretary answered the phone by saying "Sommerfield", informed her of the manner in which appellee was to collect the payments owed by Sommerfield Paving and told her appellants would pay off the balance in the month of January.

¶ 8 Payment was not received in January, and appellee commenced legal action on May 24, 1991, against appellants as well as Gary Fusco, individually and t/d/b/a Sommerfield Paving. Appellee alleged, among other things, that appellants were acting as the agents of Sommerfield Paving and that they had specifically agreed to guarantee the debt owed by Sommerfield Paving to appellee. After default judgment was entered against Gary Fusco, appellants filed a motion for summary judgment. Partial summary judgment was granted in favor of appellants on January 13, 1994, on grounds that appellants owed no contractual obligation to pay the debt owed to appellee. This case proceeded to a bench trial on the remaining counts of the complaint.

¶ 9 Prior to trial, Gary Fusco filed for bankruptcy. At trial, appellants requested a nonsuit that was denied by the trial court. At the close of testimony, appellants presented a motion for a directed verdict that was also denied by the trial court. In finding for appellee, the trial court determined the following:

1. Appellants acted as agents in connection with the transactions between Sommerfield Paving and appellee.

2. Appellants acted as guarantors of the debt owed by Sommerfield Paving to appellee, both personally and through Sommerfield Enterprises, Inc., by agreeing to assume payment of the debt if Sommerfield Paving did not pay the amount to appellee in full.

The trial court awarded damages to appellee in the amount of $37,568.75 plus six percent annual interest and costs. Thereafter, appellants filed a motion for a new trial and a judgment notwithstanding the verdict that were both denied by the trial court on June 30, 1998. This timely appeal followed.

¶ 10 We address appellants' argument that the trial court erred by finding that appellants acted as the agents for Gary Fusco in connection with the transactions between appellee and Sommerfield Paving.

Before addressing the merits of this argument, we note that the trial court did not use its finding of agency to award damages and costs to appellee. The trial court based its ruling on the finding that appellants promised to act as the guarantors of the debt owed by Sommerfield Paving to appellee. In reaching its decision, the trial court relied upon the equitable principles of estoppel. Even though we are unable to determine the relevance played by the trial court's finding of agency, we will address the merits of this issue in order to provide clarity on remand.

¶ 11 "The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Lapio v. Robbins*, 729 A.2d 1229, 1234 (Pa.Super.1999) (citation omitted). The creation of an agency relationship requires no special formalities. *Lincoln Avenue Indus. Park v. Norley*, 450 Pa.Super. 621, 677 A.2d 1219, 1222 (1996). The existence of an agency relationship is a question of fact. *Volunteer Fire Co. v. Hilltop Oil Co.*, 412 Pa.Super. 140, 602 A.2d 1348, 1351 (1992). The party asserting the existence of an agency relationship bears the burden of proving it by a fair preponderance of the evidence. *Id.* "In establishing agency, one need not furnish direct proof of specific authority, provided it can be inferred from the facts that at least an implied intention to create the relationship of principal and agent existed." *Commonwealth v. Maker*, 716 A.2d 619, 623 (Pa.Super.1998), appeal granted, 555 Pa. 475, 725 A.2d 175 (1999). However, we do not assume agency by a mere showing that one person does an act for another. *Ferry v. Fisher*, 709 A.2d 399, 405 n. 5 (Pa.Super.1998).

¶ 12 Presently, the trial court cited to the following facts as demonstrating the existence of an agency relationship between appellants and Gary Fusco:

1. Appellants handled the bookkeeping for Sommerfield Paving.
2. Appellant John Fusco signed numerous checks payable to appellee on behalf of Sommerfield Paving.
3. Appellants prepared the tax returns for Sommerfield Paving.
4. Appellant John Fusco was given full authority to sign checks and administer the payroll on behalf of Sommerfield Paving.
5. Appellant John Fusco met Gary Fusco every Thursday to manage the financial aspects of Sommerfield Paving.

Trial court opinion, at 4–5. In addition, the president of appellee testified that when appellee first started selling material to Sommerfield Paving, the president dealt only with appellant John Fusco. Not only did John Fusco purchase materials on behalf of Sommerfield Paving, but also John Fusco asked the president of appellee to extend credit to Sommerfield Paving. In light of this evidence, there is no question that the trial court properly found that appellant John Fusco acted as an agent for Sommerfield Paving in connection with the transactions involving appellee.

¶ 13 However, the record is essentially bare concerning evidence that appellant Sylvie Fusco acted as an agent for Sommerfield Paving in connection with the transactions in question. To support its finding that appellant Sylvie Fusco acted as an agent for Sommerfield Paving with respect to the transactions with appellee, the trial court cites to the facts that Sylvie Fusco aided Sommerfield Paving with bookkeeping and the preparation of tax returns. However, we find these facts inadequate to establish the existence of an agency relationship with respect to the transactions involving appellee. In addition, our thorough review of the record produced no additional facts to support the trial court's finding. Therefore, we find that the trial court erred in determining that appellant Sylvie Fusco acted as an agent on behalf of Sommerfield Paving

with respect to the transactions involving appellee.

¶ 14 Even though we agree that appellant John Fusco acted as an agent for Sommerfield Paving in connection with the transactions involving appellee, "[i]t is a basic tenet of agency law that an individual acting as an agent for a disclosed [principal] is not personally liable on a contract between the [principal] and a third party unless the agent specifically agrees to assume liability." *In re Estate of Duran*, 692 A.2d 176, 179 (Pa.Super.1997) (citation omitted). In the present case, there is no question as to whether there was a disclosed principal. The president of appellee had many conversations with Gary Fusco regarding Sommerfield Paving's outstanding payments, and Justine Ferraro Kearney focused appellee's collection efforts upon Gary Fusco. "However, a person who is contracting as an agent may be found to be personally liable where he or she either executes a contract in his or her own name or 'voluntarily incurs a personal responsibility.'" *Id.* (quoting *Pennsylvania Gas & Water Co. v. Nenna & Frain, Inc.*, 320 Pa.Super. 291, 467 A.2d 330, 336 (1983)). Thus, if appellant John Fusco purchased material from appellee in his name or willingly undertook a personal obligation, he could be found individually liable for the outstanding debt.

¶ 15 As stated before, partial summary judgment was granted in favor of appellants on the basis that appellants were not bound contractually to pay the debt owed by Sommerfield Paving to appellee. Not only does the record support this finding, but also the soundness of the partial summary judgment is not challenged on appeal.

¶ 16 The question remains whether appellant John Fusco, as agent for Sommerfield Paving, willingly undertook a personal obligation. However, we decline to address the merits of this issue. First, though the trial court addressed the issue

of whether appellants undertook a personal obligation to guarantee the repayment of Sommerfield Paving's debt, the trial court did not address this issue under the ambit of agency law but rather equitable estoppel. Second, and more importantly, this particular issue is not addressed by appellants in their brief. *See Commonwealth v. Luktisch*, 451 Pa.Super. 500, 680 A.2d 877, 879 n. 1 (1996) (citations omitted)(failure to develop an argument constitutes waiver of the claim). Accordingly, it is waived.

¶ 17 Next, we address appellants' argument that the trial court erred by applying the principles of equitable estoppel and finding that appellants personally agreed to guarantee the debt owed by Sommerfield Paving to appellee. In supporting its finding, the trial court listed the following:

1. The substantial interplay between Sommerfield Enterprises, Inc. and Sommerfield Paving.

2. Its conclusion that appellee extended credit to Sommerfield Paving because of its long-standing business relationship with Sommerfield Enterprises, Inc.

3. The "determinative" testimony of Justine Ferraro Kearney.

Trial court opinion, at 5–6. In challenging the trial court's finding, appellants argue that the trial court improperly admitted Ms. Kearney's testimony into evidence over their objection. We agree.

¶ 18 "Questions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *Peled v. Meridian Bank*, 710 A.2d 620, 625 (Pa.Super.1998). "To constitute reversible error, a ruling on evidence must be shown not only to have been erroneous but harmful to the party complaining." *Id.*, 710 A.2d at 626 (quoting *Hart v. W.H. Stewart, Inc.*, 523 Pa. 13, 16, 564 A.2d 1250, 1252 (1989)). "An evidentiary ruling which did not affect the verdict will not provide a basis for

disturbing the [fact-finder]'s judgment." *Id.*

¶ 19 The disputed portion of Ms. Kearney's testimony involved her conversation with an individual who answered the telephone of appellants' office. Ms. Kearney did not know this person's name and testified that she thought this individual was a secretary employed by appellants. Over objection, Ms. Kearney was permitted to testify regarding this unknown person's statements. Clearly, such testimony was hearsay since it was an out-of-court utterance offered to prove the truth of the matter asserted. *See Commonwealth v. Carpenter*, 555 Pa. 434, 457, 725 A.2d 154, 165 (1999). However, counsel for appellee argued that it was admissible as a vicarious admission, and the trial court admitted the testimony of the telephone conversation. Ms. Kearney testified that this individual informed her of the specifics regarding the payment of Sommerfield Paving's debt and that appellants would personally guarantee repayment.

¶ 20 Pennsylvania adheres to the strict construction of the vicarious admission exception to the hearsay rule. "For a statement to be admissible, the offering party must show that the declarant was an agent of the party against whom the admission was offered, and that he had authority to speak for that party." *Durkin v. Equine Clinics, Inc.*, 376 Pa.Super. 557, 546 A.2d 665, 672–673 (1988)(emphasis removed), appeal denied, 524 Pa. 608, 569 A.2d 1367 (1989). Herein, appellee failed to meet these requirements.

¶ 21 In the case of *DeFrancesco v. Western Pennsylvania Water Co.*, 329 Pa.Super. 508, 478 A.2d 1295 (1984), this court rejected the admissibility of certain statements as vicarious admissions with far more indicia of reliability than the case herein. The *DeFrancesco* case involved two statements made by various persons at the scene of a fire that were offered in an attempt to show who was responsible for an inadequate water supply. One of these statements was made by an unidentified person to the fire chief at the scene of the fire. The fire chief testified that a person approached him, identified himself as an employee of the Water Company and stated that the Water Company was at fault for the lack of water available to fight the fire. The chief further testified that the man had no papers or uniform, and that he did not see him get out of any of the Water Company's trucks. *DeFrancesco*, 478 A.2d at 1299. The trial court permitted the testimony into evidence as a vicarious admission.

¶ 22 The other statement admitted in the *DeFrancesco* case was made to one of the appellees. The appellee testified that an "old Italian fellow" approached him at the scene and provided similar statements concerning the Water Company's fault. The appellee further testified that he had seen this person in the Water Company's truck that morning, had seen him in the truck before, and had talked with him and sold him tires. *DeFrancesco*, 478 A.2d at 1299.

¶ 23 An en banc panel of this court reversed the trial court's decision to admit these two statements. Holding that the testimony offered was hearsay, we considered the vicarious admission rule and held that the testimony had been improperly admitted. *DeFrancesco*, 478 A.2d at 1299–1300. "[E]ven if the requirement of agency was proven, there is no indication that either of the declarants had authority to make this declaration." *Id.*, 478 A.2d at 1300. In reaching our holding, we cited to the case of *Adams v. Mackleer*, 239 Pa.Super. 244, 361 A.2d 439 (1976), which involved the question of whether a note written by a mother to the person who lent a bicycle to her minor son could be admitted against the son. The letter in question stated that the bicycle was defective. This court held that the note was not admissible against the son because there was insufficient evidence to establish that the mother

was authorized to speak for her son. *Adams*, 361 A.2d at 441.

¶ 24 In light of the strict construction of the vicarious admission rule as evidenced by the foregoing case law, the trial court erred by admitting Ms. Kearney's testimony regarding her telephone conversation with an unknown person into evidence. Other than possessing a familiar voice and answering the telephone by stating "Sommerfield", Ms. Kearney was unable to provide any further identification of the individual she spoke to regarding appellants' role in the repayment of Sommerfield Paving's debt. In fact, Ms. Kearney did not know whether this individual was employed by Sommerfield Paving or Sommerfield Enterprises, Inc. This information falls far short of the requirements set forth in the vicarious admission rule. Not only did Ms. Kearney fail to show that the declarant was an agent of appellants, but also that the declarant had authority to speak for appellants. Therefore, we find that Ms. Kearney's hearsay testimony regarding her conversation with the alleged secretary was improperly admitted pursuant to the vicarious admission rule.

¶ 25 The heavy reliance by the trial court upon Ms. Kearney's testimony regarding the telephone conversation prejudiced appellants. Although the trial court pointed to the interplay between the two businesses and appellee's long-standing business relationship with Sommerfield Enterprises, Inc., the trial court simply stated that it took these facts into consideration in deciding whether appellants guaranteed the debt owed by Sommerfield Paving. With regard to Ms. Kearney's testimony, the trial court stated that "[i]n determining that [appellants] agreed to guaranty the debt of their son to [appellee], the testimony of ... Justine Kearney (Ms. Kearney) is determinative." Trial court opinion, at 6. The trial court further described Ms. Kearney's testimony as credible and reliable evidence of appellants' promise to guarantee the debt of Sommerfield Paving. Clearly, Ms. Kear-

ney's testimony affected the verdict. Since improperly admitted evidence affected the verdict, we are constrained to grant a new trial. *See Bucchianeri v. Equitable Gas Co.*, 341 Pa.Super. 319, 491 A.2d 835, 838–39 (1985)("[w]hen improperly admitted testimony may have affected a verdict, the only correct remedy is the grant of a new trial").

¶ 26 For the foregoing reasons, we affirm the judgment in part, vacate in part and remand for a new trial consistent with the opinion of this court.

¶ 27 Judgment affirmed in part and vacated in part. Remanded for a new trial. Jurisdiction relinquished.

¶ 28 McEWEN, President Judge, files a Dissenting Statement.

McEWEN, President Judge, dissenting:

¶ 1 While the expression of the majority reveals a careful analysis and perceptive rationale of view, I would, nonetheless, affirm the decision of the distinguished Judge Ralph D. Pratt to deny the post-trial motions of appellants for judgment n.o.v. and a new trial.