J. A19043/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| VALLEY NATIONAL BANK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ENGLE EYEWEAR, INC., A | : | |
| PENNSYLVANIA CORPORATION , AND | : | |
| THOMAS J. ENGLE, INDIVIDUALLY, | : | |
| | : | |
| Appellants | : | |
| | : | |
| ------------------------------------------- | : | |
| | : | |
| THOMAS J. ENGLE, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| VALLEY NATIONAL BANK, | : | No. 1096 MDA 2017 |
| ROBERT J. KOCHENTHAL, JR., AND | : | |
| JOHN C. PREVOZNIK | : | |

Appeal from the Judgment Entered August 17, 2017,
in the Court of Common Pleas of Luzerne County
Civil Division at Nos. 4924 of 2011, 5855 of 2009

BEFORE:  GANTMAN, P.J., NICHOLS, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED: MAY 1, 2019**

Engle Eyewear, Inc., and Thomas J. Engle (collectively, "appellants")

appeal from the August 17, 2017 judgments entered by the Court of Common

Pleas of Luzerne County.  After careful consideration, we affirm.

The factual and procedural history of this case is as follows:  On May 11,

2005, Valley National Bank ("VNB") entered into a loan agreement with

Engle Eyewear, Inc. ("Engle Eyewear") in which VNB agreed to lend Engle Eyewear $75,000.[1]  On October 11, 2005, VNB entered into a second loan agreement with Engle Eyewear in which it agreed to lend Engle Eyewear an additional $34,800.[2]  Both loans were backed by the United States Small Business Administration ("SBA").  On May 11, 2006, VNB issued a notice of default and acceleration pertaining to both loans.  VNB and appellants reached a settlement agreement on June 26, 2007.

VNB initiated the case before this court by filing a complaint with the trial court on April 7, 2009 at 5855 of 2009, alleging that appellants breached the June 26, 2007 settlement agreement.  Mr. Engle filed a complaint with the trial court on October 28, 2013 at 4924 of 2011,[3] sounding in negligence **per se**, negligence, negligent misrepresentation, conversion, concerted tortious action, trespass, defamation, invasion of privacy, and infliction of emotional distress against VNB and two of its employees, Robert J. Kochenthal, Jr., and John C. Prevoznik.  Specifically, Mr. Engle avers that VNB and Messrs. Kochenthal and Prevoznik improperly disclosed his social security number and other sensitive financial information on an exhibit attached to

---

[1] For ease of discussion, this agreement shall be referenced as the "first loan agreement."

[2] For ease of discussion, this agreement shall be referenced as the "second loan agreement."

[3] Mr. Engle filed a writ of summons with the trial court on April 5, 2011.

VNB's complaint filed at 5855 of 2009. The trial court consolidated the two cases at 5855 of 2009 on October 2, 2014.

> The [trial court held] a bench trial in the consolidated matters on May 17-18, 2016. The [trial court] issued an Order in the consolidated matter on December 21, 2016, entering judgment in favor of [VNB and Messrs. Kochenthal and Prevoznik] in Case Number 4924, and entering judgment in favor [of VNB] in Case Number 5855 for a combined total of $157,696.75, plus interest at the rate of 6.25% per annum from May 16, 2016 to the date of entry of the judgment. [Mr.] Engle filed a post-trial motion on January 17, 2017 seeking reconsideration of the [trial court's] December 21, 2016 Order. [Mr.] Engle also filed on January 18, 2017 a Motion **Nunc Pro Tunc** to consider the Post-Trial Motion timely. The [trial court] granted [Mr.] Engle's Motion **Nunc Pro Tunc** on February 6, 2017.

Trial court opinion, 11/6/17 at 2 (footnote omitted).

On January 20, 2017, appellants filed a notice of appeal to this court. In a **per curiam** order, we quashed appellants' appeal as premature on May 11, 2017. On June 19, 2017, the trial court denied appellants' post-trial motion. Appellants filed another notice of appeal to this court on July 17, 2017.[4] On July 26, 2017, this court entered a **per curiam** order directing

---

[4] We note that appellant filed one notice of appeal from two judgments entered in this case by the trial court. Two separate notices of appeal should have been filed as required by case law and the Pennsylvania Rules of Appellate Procedure. However, until recently the practice of filing a single notice of appeal was not subject to quashal where: (1) the issues raised as to both final orders were substantially identical; (2) where the appellees raised no objection; and (3) where the period in which to file an appeal had run. **See General Electric Credit Corporation v. Aetna Casualty and Surety Company**, 263 A.2d 448, 453 (Pa. 1970). Our supreme court recently decided that this indulgence was at an end; and henceforth, as of June 1,

appellants to praecipe the trial court prothonotary to enter judgment and to file a certified copy of the trial court docket reflecting the entry of judgment. In response, appellants filed with this court a copy of correspondence to the Luzerne County Prothonotary enclosing a praecipe to enter judgment.

We entered another **per curiam** order on August 15, 2017, acknowledging receipt of appellants' response to our July 26, 2017 order but directing appellants to file certified docket entries showing entry of judgment below with this court. In response, appellants filed the certified docket showing that the Luzerne County Prothonotary entered judgment in favor of VNB in the litigation originally docketed at 5855 of 2009. On August 24, 2017, the prothonotary entered judgment in favor of VNB and Messrs. Kochenthal and Prevoznik and against Mr. Engle in the litigation originally docketed at 4924 at 2011, upon receipt of a praecipe from appellants.

Meanwhile, on July 17, 2017, the trial court ordered appellants to file a concise statement of errors complained of on appeal pursuant to

---

2018, the failure to file a separate notice of all final orders resolving issues arising on one or more lower court dockets would result in the appeal being quashed. **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018). We recognize that appellants here cannot meet the first prong of the **General Electric** test; however, in an abundance of caution based on the reasoning in **Walker**, we will not quash this appeal, as it was filed prior to the effective date of the **Walker** decision.

Pa.R.A.P. 1925(b). Appellants complied on August 18, 2017.[5] The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on November 6, 2017.

As set forth above, appellants filed their notice of appeal before entry of final judgment. We will treat appellants' notice of appeal as having been taken from the final judgments in this case. **See** Pa.R.A.P. 905(a); **see also American and Foreign Ins. Co. v. Jerry's Sport Center**, 948 A.2d 834, 842 n.1 (Pa.Super. 2008), **affirmed**, 2 A.3d 526 (Pa. 2010) (citations omitted). Additionally, we note that we have amended the caption to reflect that this appeal is taken from the judgment entered on August 17, 2017.

Appellants raise the following issues for our review:

> I. Whether the trial court erred in the matter at 5855 of 2009 (i) by holding for VNB on the promissory notes, dated May 11, 2005 and October 11, 2005, because VNB failed to prove that it was the holder of such notes, or that it was otherwise authorized to prosecute an action to enforce such notes, (ii) by holding that [Mr.] Engle was personally liable on promissory notes that he neither signed nor indorsed, and (iii) by holding for VNB on the "First Loan Agreement" (so called in VNB's complaint) and the "Second Loan Agreement" (so called in VNB's complaint), because VNB failed to prove the existence of any such Loan Agreements?
>
> II. Whether the trial court erred by holding that VNB, [and Messrs. Kochenthal and Prevoznik] owed no duty to [Mr.] Engle, and have no liability for the unauthorized and improper

---

[5] In its Rule 1925(b) order, the trial court ordered appellants to file their concise statement within 30 days. We note that appellants timely served their statement on August 16, 2017. Neither the trial court nor appellee notes that appellants' concise statement was not timely filed.

> public dissemination of [Mr.] Engle's confidential financial information and personal identifiers, including his social security number?

Appellant's brief at 6.

In the first issue on appeal, appellants challenge the verdict reached by the trial court. Specifically, appellants contend that VNB failed to prove that it is the holder of the promissory notes executed on May 11, 2005 and October 11, 2005, and it is, therefore, not entitled to seek enforcement. (*Id.* at 13.) The trial court determined that VNB, through Mr. Kochenthal's testimony, established that it was entitled to enforce the promissory notes. (Trial court opinion, 11/6/17 at 5.)

When reviewing a nonjury verdict, we are governed by the following standard:

> Our appellate role in cases arising from nonjury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial

> are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.
>
> ***Allegheny Energy Supply Co., LLC v. Wolf Run Min. Co.***, 53 A.3d 53, 60-61 (Pa.Super. 2012) (citation and quotation marks omitted; brackets and ellipses in original). The trial court, as the finder of fact, is free to believe "all, part or none of the evidence presented." ***Ruthrauff, Inc. v. Ravin, Inc.***, 914 A.2d 880, 888 (Pa.Super. 2006) (citation omitted). "Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact finder." ***Id.*** (citation and internal quotation marks omitted).

***Gamesa Energy USA, LLC v. Ten Penn Center Associates, L.P.***, 181 A.3d 1188, 1191-1192 (Pa.Super. 2018), ***appeal granted***, 191 A.3d 749 (Pa. 2018).

The Pennsylvania Commercial Code defines a person entitled to enforce an instrument, in this case a promissory note, as:

> (1) the holder of the instrument;
>
> (2) a nonholder in possession of the instrument who has the rights of a holder; or
>
> (3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3309 (relating to enforcement of lost, destroyed or stolen instrument) or 3418(d) (relating to payment or acceptance by mistake).
>
> A person may be a person entitled to enforce the instrument even though the person is not the owner

of the instrument or is in wrongful possession of the instrument.

13 Pa.C.S.A. § 3301. "Section 1201 defines a 'holder,' in relevant part, as 'the person in possession of a negotiable instrument that is payable either to the bearer or to an identified person that is the person in possession.'" **PHH Mortg. Corp. v. Powell**, 100 A.3d 611, 620 (Pa.Super. 2014), quoting 13 Pa.C.S.A. § 1201(b)(21)(i).

In their brief, appellants make broad arguments that it is VNB's practice to sell loans backed by the SBA on the secondary market. (**See** appellants' brief at 15.) Mr. Engle appears to rely on, and cites to, forms that VNB filed with the Securities and Exchange Commission ("SEC") describing its practice of originating SBA loans and then selling them on the secondary market. Whether VNB is the owner or the "person entitled to enforce" the notes at issue in this case is of no import. Indeed, as explained by comment to Section 3203 of the Pennsylvania Uniform Commercial Code:

> The right to enforce an instrument and ownership of the instrument are two different concepts. A thief who steals a check payable to bearer becomes the holder of the check and a person entitled to enforce it, but does not become the owner of the check. . . . Ownership rights in instruments may be determined by principles of the law of property, independent of Article 3, which do not depend upon whether the instrument was transferred under Section 3-203. Moreover, a person who has an ownership right in an instrument might not be a person entitled to enforce the instrument. . . . Although [a] document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the

> instrument until Y obtains possession of the instrument.

***PHH Mortg. Corp.***, 100 A.3d at 621, quoting 13 Pa.C.S.A. § 3203 Comment.

Here, the evidence of record, through Mr. Kochenthal's testimony, reflects that VNB was a holder of the promissory notes at issue and was accordingly entitled to enforce them.  Therefore, we find that the trial court did not err when it determined that VNB was entitled to enforce the promissory notes.

Mr. Engle next contends that the trial court erred when it concluded that Mr. Engle was personally liable for the promissory notes for both loan agreements with VNB.  (Appellants' brief at 18.)  Specifically, Mr. Engle argues that he cannot be held personally liable because he neither signed nor endorsed the promissory notes in his individual capacity.  (***Id.*** at 19.)

> "It is a basic tenet of agency law that an individual acting as an agent for a disclosed [principal] is not personally liable on a contract between the [principal] and a third party unless the agent specifically agrees to assume liability." ***In re Estate of Duran***, 692 A.2d 176, 179 (Pa.Super. 1997).  Nevertheless, a person acting as an agent may assume personal liability on a corporate contract where he executes a contract in his own name or voluntarily undertakes a personal responsibility.  ***B & L Asphalt Industries, Inc. v. Fusco***, 753 A.2d 264, 270 (Pa.Super. 2000).

***Bennett v. A.T. Masterpiece Homes at Broadspring, LLC***, 40 A.3d 145, 150 (Pa.Super. 2012).

Here, Mr. Engle admitted to signing a personal guarantee for both loan agreements. (Notes of testimony, 5/17/16 at 136-138.) The personal guarantee for the first loan agreement provided, in relevant part,

> [Mr. Engle] unconditionally guarantees payment to [VNB] of all amounts owing under the [promissory note]. This Guarantee remains in effect until the [promissory note] is paid in full. [Mr. Engle] must pay all amounts due under the [promissory note] when [VNB] makes written demand upon [Mr. Engle]. [VNB] is not required to seek payment from any other source before demanding payment from [Mr. Engle].

Personal guarantee, 5/11/05. Mr. Engle signed the guarantee on May 11, 2005.

On October 11, 2005, Mr. Engle signed a personal guarantee that provided the following:

> I understand that I am responsible for the payment of the full amount of the Obligations, even if there are other Guarantors. You can demand payment from me without first (a) seeking payment from the Borrower or any other Obligor or (b) trying to collect from the Mortgaged Property or any other collateral.

Personal guarantee, 10/11/05.

The trial court admitted into evidence a copy of the June 26, 2007 settlement agreement, which contained copies of both promissory notes and both personal guarantees. (Notes of testimony, 5/17/16 at 44.) Therefore, we find that the trial court did not err when it concluded that Mr. Engle is personally liable for the repayment of both of the loans in question.

Mr. Engle also avers that the trial court erred because VNB failed to produce the first and second loan agreements. (Appellants' brief at 20.) Specifically, Mr. Engle states that the trial court only admitted into evidence copies of the promissory notes, rather than copies of the "elusive" loan agreements. (*Id.* at 21.) Mr. Engle further argues that because Engle Eyewear, and not Mr. Engle, was the maker of each note, the trial court erred in its conclusion that Mr. Engle is personally liable on the loans. (*Id.*) As discussed extensively above, Mr. Engle executed personal guarantees for both loans. Accordingly, this issue is without merit.

Under his next issue on appeal, Mr. Engle avers that the trial court erred when it held that VNB and Messrs. Kochenthal or Prevoznik owed no duty to Mr. Engle, and were therefore not liable to him for the "unauthorized and improper public dissemination of [Mr.] Engle's confidential financial information and personal identifiers, including his social security number." (Appellants' brief at 22.) Specifically, Mr. Engle claims that VNB and its employees violated the federal Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.*, as well as Pennsylvania law pertaining to the privacy of social security numbers when VNB and its employees disclosed his social security number in the complaint VNB filed against appellants and that the trial court erred when it entered a verdict in favor of appellees. (*Id.* at 22-23, citing 74 P.S. § 201 *et seq.*) Additionally, Mr. Engle alleges that the trial court erred when it entered judgment in favor of appellees on his claims of conversion of

intangible personal property, negligence, and negligence *per se* and granted appellees' applications for nonsuit for the intentional infliction of emotional distress and concerted tortious conduct causes of action. Mr. Engle likewise avers that the trial court erred when it granted Mr. Kochenthal's application for nonsuit on the grounds that Mr. Kochenthal was shielded from personal liability due to his status as a corporate officer for VNB.[6]

**Gramm-Leach-Blilely Act**

When it passed the Gramm-Leach-Blilely Act, Congress, as noted by appellant, declared its policy to be, "that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a). Corresponding federal regulations, however, reflect that the Gramm-Leach-Blilely Act's protections do not apply to business loans. Indeed, as noted by appellees:

> This part applies only to nonpublic personal information about individuals who obtain financial products or services primarily for personal, family or household purposes from the institutions listed below. ***This part does not apply to information about companies or about individuals who obtain***

---

[6] While the issues relating to these specific torts do not appear in appellants' statement of questions presented, we find that they could be fairly considered to be subsidiary questions to the second question identified in their brief. **See** Pa.R.A.P. 2116(a) ("The statement [of questions presented] will be deemed to include every subsidiary question fairly comprised therein"). Therefore, we shall address Mr. Engle's sub-issues on their merits.

> **financial products or services for business, commercial, or agricultural purposes.**

16 C.F.R. § 313.1(b) (emphasis added). Moreover, in this Commonwealth, while our General Assembly has passed legislation prohibiting the public posting or display of an individual's social security number, such prohibitions do not apply to "a document that originated with **or is filed with, recorded in or is maintained by any court component or part of the unified judicial system.**" 74 P.S. § 201(a)(1), (e) (emphasis added).

Here, the record reflects that Mr. Engle obtained a loan from VNB for business purposes. The record further reflects that VNB and its employees disclosed Mr. Engle's social security number only when VNB filed its complaint against appellants with the trial court. Based on the plain language of the relevant federal regulations and state statutes, Mr. Engle's claim that appellees violated the Gramm-Leach-Blilely Act is without merit. We, therefore, find that the trial court did not commit an error of law when it entered a verdict in favor of VNB and its employees.

**Conversion of Intangible Personal Property**

Mr. Engle invites this court to follow the lead of Massachusetts, New York, and other jurisdictions and recognize a common law cause of action in conversion for the misappropriation and mishandling of intangible personal property. (**See** appellants' brief at 29-33.) We are required to decline this invitation. Only our supreme court or the General Assembly may adopt new

causes of action within the Commonwealth. ***D'Errico v. DeFazio***, 763 A.2d 424, 433-434 (Pa.Super. 2000), ***appeal denied***, 782 A.2d 546 (Pa. 2001), citing ***Taylor v. Albert Einstein Medical Center***, 754 A.2d 650 (Pa. 2000).

Even if we had the authority to recognize and adopt a cause of action at common law, we are prevented from doing so because this issue is waived on appeal. The Pennsylvania Rules of Appellate Procedure mandate that any issue not included in an appellant's concise statement of issues complained of on appeal is waived. Pa.R.A.P. 1925(b)(vii); ***see also In re D.Y.***, 34 A.3d 177, 180-181 (Pa.Super. 2011), ***appeal denied***, 47 A.3d 848 (Pa. 2012).

Here, Mr. Engle did not include any issues pertaining to Pennsylvania's recognizing the cause of action of conversion of intangible personal property at common law in his Rule 1925(b) statement. Accordingly, the issue is waived on appeal.

**Negligence and Negligence *Per Se***

Mr. Engle next argues that the trial court erred when it entered a verdict in favor of VNB and against Mr. Engle on Mr. Engle's negligence and negligence ***per se*** claims because VNB owned him a duty to not disclose his social security number. (***See*** appellants' brief at 33-36.) As discussed above, the rule against disclosure does not apply to court filings. In order to prevail on a negligence cause of action, a plaintiff must establish (1) a legally recognized duty owed by the defendant; (2) a breach of that duty; (3) damages suffered

by the plaintiff; and (4) a causal nexus between the breach of the duty owed and damages suffered by the plaintiff. ***Eckroth v. Pennsylvania Elec., Inc.***, 12 A.3d 422, 427 (Pa.Super. 2010), ***appeal denied***, 21 A.3d 678 (Pa. 2011).

Additionally, Mr. Engle brought a cause of action under negligence ***per se***. Our cases define negligence ***per se*** as "conduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances. Pennsylvania recognizes that a violation of a statute or ordinance may serve as the basis for negligence ***per se***." ***Mahan v. Am-Gard, Inc.***, 841 A.2d 1052, 1059 (Pa.Super. 2003), ***appeal denied***, 858 A.2d 110 (Pa. 2004), quoting ***Wagner v. Anzon, Inc.***, 684 A.2d 570, 574 (Pa.Super. 1996). In order to prevail on a negligence ***per se*** cause of action, a plaintiff must prove by a preponderance of the evidence that:

> (1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals; as opposed to the public generally;
>
> (2) The statute or regulation must clearly apply to the conduct of the defendant;
>
> (3) The defendant must violate the statute or regulation;
>
> (4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

***Ramalingam v. Keller Williams Realty Group, Inc.***, 121 A.3d 1034, 1042-1043 (Pa.Super. 2015), quoting ***Schemberg v. Smicherko***, 85 A.3d 1071, 1073-1074 (Pa.Super. 2014).

As discussed in detail above, appellees do not owe a duty to Mr. Engle in this case pertaining to the disclosure of his social security number. Accordingly, his negligence claim is without merit. Further, Mr. Engle's claim of negligence **per se** must likewise fail, as Mr. Engle has failed to establish that appellees have violated any statute, regulation, or ordinance. Therefore, we find that the trial court did not commit an error of law when it entered judgment in favor of appellees for Mr. Engle's causes of action sounding in negligence and negligence **per se**.

## Intentional Infliction of Emotional Distress

Mr. Engle next argues that the trial court erred when it granted appellees' application for nonsuit pertaining to Mr. Engle's claim of intentional infliction of emotional distress ("IIED"). Specifically, Mr. Engle alleges that the trial court erred by failing to consider the "actual elements" of IIED. (Appellants' brief at 45-46.)

> Our standard of review regarding the entry of nonsuit is well settled:
>
> > A trial court may enter a compulsory nonsuit on any and all causes of action if, at the close of the plaintiff's case against all defendants on liability, the court finds that the plaintiff has failed to establish a right to relief. Pa.R.C.P. No. 230.1(a), (c); **see Commonwealth v. Janssen Pharmaceutica, Inc.**, [] 8 A.3d 267, 269 n.2 ([Pa.] 2010). Absent such finding, the trial court shall deny the application for a nonsuit. On appeal,

> entry of a compulsory nonsuit is affirmed only if no liability exists based on the relevant facts and circumstances, with appellant receiving "the benefit of every reasonable inference and resolving all evidentiary conflicts in [appellant's] favor." *Agnew v. Dupler*, [] 717 A.2d 519, 523 ([Pa.] 1998). The compulsory nonsuit is otherwise properly removed and the matter remanded for a new trial.
>
> *Scampone v. Highland Park Care Ctr.*, [] 57 A.3d 582, 595-96 ([Pa.] 2012). The appellate court must review the evidence to determine whether the trial court abused its discretion or made an error of law. *Barnes v. Alcoa, Inc.*, 145 A.3d 730, 735 (Pa.Super. 2016).

*Baird v. Smiley*, 169 A.3d 120, 124 (Pa.Super. 2017).

In order to prevail on a cause of action of IIED, a plaintiff must establish the following: "(1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) that distress must be severe." *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa.Super. 1997), *affirmed*, 720 A.2d 745 (Pa. 1998), citing *Hooten v. Penna. College of Optometry*, 601 F. Supp. 1151, 1155 E.D.Pa. 1984); Restatement (Second) of Torts § 46. The *Hoy* court further stated:

> While our courts recognize a cause of action for intentional infliction of emotional distress, we have allowed recovery in only very egregious cases. *See Papieves v. Kelly*, [] 263 A.2d 118, ([Pa.] 1970) (concealing child's death and withholding body from parents). *But see D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, [] 431 A.2d 966 ([Pa.] 1981) (insurance company's alleged bad faith failure to honor a claim does not rise to level of extreme or outrageous conduct); *Forster v.*

> ***Manchester***, [] 189 A.2d 147 ([Pa.] 1963) (not outrageous to follow an accident victim, conducting surveillance to determine the extent of the injury); ***Mullen v. Suchko***, [] 421 A.2d 310 ([Pa.Super.] 1980) (broken promise of financial support from lover not extreme and outrageous).

***Hoy***, 691 A.2d at 482-483; ***see also Toney v. Chester County Hosp.***, 961 A.2d 192, 203 (Pa.Super. 2008), ***affirmed***, 36 A.3d 83 (Pa. 2011) (***per curiam***) ("allegations of negligence and carelessness do not rise to the level of conduct premised upon standards such as 'atrocious' and 'utterly intolerable' behavior").

In the case before us, we find that the trial court properly concluded that Mr. Engle has not established that liability exists based on the relevant facts and circumstances, even with the benefit of every reasonable inference. Specifically, the trial court did not err when it determined that Mr. Engle did not present sufficient evidence that appellees' disclosure of his social security number in a court filing was extreme or outrageous. Therefore, the trial court did not abuse its discretion when it granted appellees' application for a nonsuit.

**Concerted Tortious Conduct**

Mr. Engle next argues that the trial court erred when it granted appellees' application for a nonsuit pertaining to his claim of concerted tortious conduct.

Section 876 of the Restatement (Second) of Torts addresses the tort of civil aiding and abetting, which is also known as concerted tortious conduct:

**§ 876.  Persons Acting in Concert**

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a)   does a tortious act in concert with the other or pursuant to a common design with him, or

(b)   knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c)   gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

* * *

**Comment on Clause (a):**

a.   Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result.  The agreement need not be expressed in words and may be implied and understood to exist from the conduct itself. Whenever two or more

> persons commit tortious acts in concert, each becomes subject to liability for the acts of the others, as well as for his own acts. The theory of the early common law was that there was a mutual agency of each to act for the others, which made all liable for the tortious acts of any one.

*HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.*, 107 A.3d 114, 120 (Pa.Super. 2014), quoting Restatement (Second) of Torts § 876 (1977) and comment on clause (a).

As established in detail above, Mr. Engle failed to establish that either appellee engaged in tortious conduct. Accordingly, Mr. Engle's claim of concerted tortious conduct must fail, as he is not able to establish all three elements of his claim. Therefore, we find that the trial court did not abuse its discretion when it granted appellees' application for a nonsuit.

**Participation Theory**

Next, Mr. Engle contends that the trial court erred when it granted Mr. Kochenthal's application for nonsuit on the grounds that Mr. Kochenthal was shielded from personal liability due to his status as a corporate officer of VNB. Specifically, Mr. Engle argues that Mr. Kochenthal should be held liable for his alleged tortious conduct under the participation theory. (Appellants' brief at 38.)

"The law of Pennsylvania has long recognized that personal liability can be found against a corporate officer who actually participates in the wrongful, injury-producing act." ***Brindley v. Woodland Village Restaurant, Inc.***, 652 A.2d 865, 868 (Pa.Super. 1995), quoting ***Amabile v. Auto Kleen Car Wash***, 376 A.2d 247, 252 (Pa.Super. 1977). As established above, this claim must likewise fail because Mr. Engle failed to establish that Mr. Kochenthal participated in any tortious conduct. Therefore, the trial court did not abuse its discretion when it granted Mr. Kochenthal's application for a nonsuit.

**Cross-Examination of Richard E. Fischbein, M.D.**

Finally, Mr. Engle alleges that the trial court erred when it overruled five of Mr. Engle's objections that were raised on cross-examination during Richard Fischbein, M.D.'s deposition. Specifically, Mr. Engle claims that the trial court's decision represents reversible error that "affects both its decision on nonsuit, as well as its merits determination." (Appellants' brief at 63.) We find that Mr. Engle has waived this issue on appeal.

> "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." ***Estate of Haiko v. McGinley***, 799 A.2d 155, 161 (Pa.Super. 2002); Pa.R.A.P. 2119(b). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." ***Lackner v. Glosser***, 892 A.2d 21, 29-30 (Pa.Super. 2006) (citations omitted).

> This Court will not act as counsel and will not develop arguments on behalf of an appellant. ***Irwin Union National Bank and Trust Company v. Famous and Famous and ATL Ventures***, 4 A.3d 1099, 1103 (Pa.Super. 2010) (citing ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa.Super.2007)). Moreover, we observe that the Commonwealth Court, our sister appellate court, has aptly noted that "[m]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter." ***Boniella v. Commonwealth***, 958 A.2d 1069, 1073 n.8 (Pa.Cmwlth. 2008) (quoting ***Commonwealth v. Spontarelli***, 791 A.2d 1254, 1259 n. 11 (Pa.Cmwlth. 2002)).

***Coulter v. Ramsden***, 94 A.3d 1080, 1088-1089 (Pa.Super. 2014), ***appeal denied***, 110 A.3d 998 (Pa. 2014).

Here, Mr. Engle's brief provides little more than an identification of the trial court decisions that form the basis of his appeal and broad conclusions alleging that the trial court erroneously overruled Mr. Engle's objections, improperly received Dr. Fischbein's testimony into evidence, and improperly required Mr. Engle to establish elements that were not part of the causes of action pleaded in his complaint. (***See*** appellants' brief at 56-63.) Mr. Engle provides no references to any governing authority in support of his contention, nor does he provide any substantive analysis. Accordingly, Mr. Engle has waived this issue on appeal.

Judgments affirmed.

J. A19043/18

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/2019