**Jacob PELED, Johannes Wulf, and Raphael Peled, Appellants,**

v.

**MERIDIAN BANK, Appellee,**

v.

**PARAGON, U.S.A., INC., Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 3, 1998.

Filed April 17, 1998.

---

Anthony S. Beltrami, Bethlehem, for appellants.

Henry L. Shranger, Philadelphia, for Meridian Bank, appellee.

Before POPOVICH and JOYCE, JJ., and CIRILLO, President Judge Emeritus.

JOYCE, Judge:

This is an appeal from the final judgment entered in favor of Appellee–Meridian Bank in connection with Appellants' action for breach of contract, conversion and fraud. For the reasons set forth below, we affirm. Before addressing the merits of Appellants' claims, it is necessary to recount the pertinent facts giving rise to this appeal.

On July 1, 1992, Jacob Peled,[1] Harry Cardillo[2] and John Lovett[3] executed a share-

---

1. Peled is the managing director of Pelmar Engineering, Ltd. Pelmar is an investor in Paragon,

U.K., a corporation at which Peled serves as its chairman.

2. Cardillo is the president and chief executive

holder's agreement pursuant to which Appellee, Paragon, USA, Inc. (Paragon) was formed.[4] The agreement designated Lovett as the president of Paragon and Cardillo as chairman of the corporation's board of directors. Although Peled and Johannes Wulf [5] were among the other named directors, neither held any offices in Paragon. Nor were they authorized to handle matters pertaining to Paragon's finances. Rather, the shareholder agreement specified that Lovett was to establish Paragon's bank accounts and that all checks in excess of $1,000.00 were to be signed by both Lovett and Michael Johnston.[6]

To assist Paragon in its efforts to supply products to Schieffer, Peled persuaded Schieffer to issue a letter of credit to Paragon. Consequently, an irrevocable letter of credit was opened in Paragon's favor. Deutsche Bank (DB) issued the letter of credit.[7] Paragon maintained its bank account [8] at Appellee, Meridian Bank (Meridian).[9]

Paragon shipped its first load of conveyor belts to Schieffer during the latter part of September or early October, 1992. Because of defects in the shipment, Wulf and Peled purportedly entered into a verbal agreement pursuant to which future payments on the letter of credit were to be deposited into Peled's checking account at Meridian.[10] According to Peled, these funds were to be held in trust for Paragon and would be disbursed to Paragon upon correction of the deficiencies in shipment.

Schieffer apparently advised DB of this change. On November 3, 1992, DB sent an encoded message to Meridian which purported to amend the letter of credit by directing that proceeds drawn thereon be deposited into account number 5041–9681, i.e., Peled's account. All other terms of the letter of credit were to remain in effect, however. None of the officers, directors or other persons authorized by the shareholder's agreement consented, expressly or otherwise, to the amendment.

Meridian subsequently received the documentation from Paragon's shipment agent which referred to Paragon's account number. As a result, Meridian treated Paragon's actions as a rejection of the amendment and deposited the proceeds into Paragon's account. Between November 30, 1992 and December 2, 1992, Peled contacted Meridian and advised that the funds drawn on the letter of credit were credited to the wrong account. Accordingly, he demanded that Meridian transfer the funds to the Peled account number pursuant to the terms of the amendment. Believing that the account belonged to Paragon and that Peled was authorized to act on Paragon's behalf, Meridian acceded to his request. Meridian likewise credited a second payment drawn on the letter of credit to Peled's account.

On December 4, 1992, Meridian was contacted by Mark Hoffman, the treasurer of Paragon, who inquired regarding the disposition of funds issued under the letter of credit. Cardillo and Hoffman, acting on behalf of Paragon, advised Meridian in writing that

officer of Globe International (Globe) and Victor Balata Manufacturing Company (VBMC). VBMC is a wholly separate company which manufactured products for Globe.

3. John Lovett is the president and sole shareholder of Cleveland Oak Belting Company (COB).

4. Paragon, U.K., VBMC and COB were Paragon's shareholders. Paragon was created to produce rubber industrial conveyor belts. Although Paragon participated in the trial proceedings and is identified in the caption, its counsel has advised us that he does not intend to file a brief on its behalf. Paragon therefore is not a participant in this appeal.

5. Johannes Wulf is the managing director of a German corporation known as Schieffer, GmbH

(Schieffer). Schieffer was one of Paragon's primary customers.

6. Johnston, an employee of Paragon, U.K., was also a director of Paragon.

7. Deutsche Bank is the issuer, as defined in 13 Pa.C.S.A. § 5103.

8. Paragon's account number was 5041–6178.

9. Meridian acted as an advising bank, as defined in 13 Pa.C.S.A. § 5103.

10. Peled, Wulf and Peled's son, Raphael Peled, were signatories to this account. The Peled account number was 5041–9681.

Paragon rejected the amendment to the letter of credit. As a result of Paragon's letter and its own examination of the pertinent documentation, Meridian transferred the letter of credit proceeds from the Peled account to Paragon's account.

Shortly thereafter, Peled discovered that the funds were no longer in his account and contacted Meridian. After Meridian refused to honor Peled's demand to recredit the funds to his account, Appellants, Peled, Wulf and Raphael Peled, instituted suit against Meridian. Paragon was later joined as an additional defendant by Meridian.

A nonjury trial was held in May, 1995 following which the trial court found in favor of Meridian with respect to Appellants' claims. Appellants subsequently sought leave to file post-trial motions *nunc pro tunc*; the trial court granted their request. The trial court denied Appellants' post-trial motions in June, 1997. This appeal followed.[11] Appellants present two issues for review: (1) whether the trial court erred in denying their motion for judgment notwithstanding the verdict; and (2) whether the trial court erred in refusing to admit certain documents into evidence.

Appellants initially challenge the trial court's denial of their motion for judgment notwithstanding the verdict.

> In reviewing a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, a judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. Further, a judge's appraisement of evidence is not to be based on how he would have voted had he been ... the [trier of fact], but on the facts as they come through the

sieve of the [fact-finder's] deliberations. There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant.

*Moure v. Raeuchle*, 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992) (citations and quotation marks omitted). We are also mindful of the fact that:

> The decision of a trial judge sitting without a jury must be accorded the same weight as a jury verdict.... [A] reviewing court will not disturb the trial judge's findings of fact unless they are unsupported by competent evidence. Since the trial judge is in the best position to judge the credibility of the witnesses, an appellate court may not re-examine the weight to be given to their testimony. Similarly, an appellate court may not substitute its judgment for that of the trial judge.

*Alberici v. Safeguard Mutual Insurance Co.*, 444 Pa.Super. 351, 664 A.2d 110, 113 (1995) (citations omitted). Appellants' arguments and the decision of the trial court will be evaluated in accordance with these principles.

Appellants contend they are entitled to judgment n.o.v. with regard to their breach of contract action.[12] Appellant's Brief at 12. The essence of Appellants' argument is that they were the proper recipients of the funds and that Appellee breached its depositor/creditor agreement with Appellants by transferring the funds to Paragon's account. To properly address Appellants' argument, it is necessary to examine the circumstances surrounding the transaction and the law pertinent thereto.

■ As previously noted, Paragon was the beneficiary of an irrevocable letter of credit issued by DB, with Appellee acting in the capacity of an advising bank. *See* Defen-

---

11. Final judgment was duly entered. Although Appellants' notice of appeal was prematurely filed prior to the entry of final judgment, this irregularity does not affect our ability to review this appeal. *See* Pa.R.A.P., Rule 905(a), 42 Pa. C.S.A. (a notice of appeal filed after the announcement of a determination but before the

entry of an appealable order shall be treated as filed after such entry and on the day thereof).

12. As Appellants' do not question the denial of their motion in connection with their fraud and conversion claims, these matters will not be discussed.

dant's Exhibit 2 (Letter from Meridian Bank to Paragon of September 25, 1992 advising of terms of letter of credit). DB attempted to amend the letter of credit by changing the beneficiary's account number to Peled's account number. *See* Plaintiff's Exhibit 6 (Letter from Meridian Bank to Paragon of 11/4/92 indicating that DB proposed to amend the letter of credit); Plaintiff's Exhibit 20, at 130–131 (S.W.I.F.T. message from DB to Meridian of 11/3/92). Assuming, for the purpose of this discussion only, that the amendment was valid, we must determine whether it was effective.

■ The UCC provides that "[u]nless otherwise agreed once an irrevocable letter of credit is established…as regards a beneficiary it can be modified or revoked only with his consent." 13 Pa.C.S.A. § 5106(b). There is absolutely no evidence of a contrary agreement by the parties here. Nor does the record even remotely suggest that Paragon consented to the amendment.[13]

Paragon explicitly rejected the amendment in its letter to Appellee. *See* Defendant's Exhibit 13 (Letter from Harry Cardillo and Mark Hoffman to Denise O'Connor, an employee of Meridian Bank, of 12/4/92). Paragon also never advised its shipping agent of the purported changes. Consequently, the documents forwarded by the shipping agent to Appellee and ultimately DB, continued to reflect that Paragon was the beneficiary and that the funds drawn upon the letter of credit were to be deposited to Paragon's bank account. *See* Defendant's Exhibits 4 and 5 (sight drafts and other documents of title indicating that funds drawn under letter were to be remitted to Paragon's account). Paragon's directions to its shipping agent, coupled with its express rejection, unequivocally demonstrate that it did not accept the proposed amendment. It is therefore clear

that the proceeds from the letters of credit properly belonged to Paragon.

Having made this determination, we must next consider Appellee's obligations in regard to the transaction. With regard to this issue, the UCC provides, in relevant part:

**(a) Obligation of a bank advising a credit.**—Unless otherwise specified an advising bank by advising a credit issued by another bank does not assume any obligation to honor drafts drawn or demands for payment made under the credit but it does assume obligation for the accuracy of its own statement

\*　　\*　　\*

■ **(c) Effect when bank incorrectly advises terms of credit.**—Even though an advising bank incorrectly advises the terms of a credit it has been authorized to advise the credit is established as against the issuer to the extent of its original terms.

13 Pa.C.S.A. § 5107(a) and (c) (emphasis in original). As explained by the commentary, an advising bank only has an obligation to accurately transmit the terms of the letters of credit. *Id.*, Comment 1. It has no promissory liability. *Id.*; *Banco Nacional de Desarrollo v. Mellon Bank, N.A.*, 726 F.2d 87, 89 n. 2 (3d Cir.1984).

■ When sections 5106 and 5107 are read in conjunction with each other, it is apparent that Appellee, as the advising bank, was only required to accurately transmit the terms of the letters of the credit, any other documents and payments drawn upon the letter of credit to the beneficiary and issuer. Appellee was likewise obligated to follow the terms of the letter of credit as originally issued, since Paragon rejected the proposed amendment. Consequently, Appellee was not obligated to adhere to the amendment and credit the funds to Peled's account.

---

**13.** Although Peled testified that when he received notice of the amendment from Appellee, he contacted the bank and verbally accepted the amendment, (N.T. 5/22/95 at 84–88), Appellee's employee, Holly Krop, denied receiving such confirmation from Peled, (N.T. 5/24/95 at 396). The trial court did not deem Peled's testimony to be credible. Trial Court Opinion, filed 6/11/97, at 14. We are bound by the trial court's credibility determination. *Alberici v. Safeguard Mutual*

*Insurance Co., supra.* In any event, Peled had no authority to act on Paragon's behalf. *See* Defendant's Exhibit 10 (Letter from John Lovett to Harry Cardillo of 10/8/92) (indicating that Peled was not a valid signatory to Paragon's checking account and did not possess the authority to obligate the company in any manner; Lovett further stated that substantive decisions regarding the operation of Paragon were to be made only with his knowledge and consent).

While the above letter of credit provisions are instructive, they do not materially advance our inquiry as to whether Appellee, as an advising bank, was permitted to recoup funds which were mistakenly credited to Appellants' account at Peled's unauthorized insistence. We must therefore look elsewhere for guidance.[14]

■ The UCC permits a depository-payor bank[15] to charge back the amount of an item to its customer. 13 Pa.C.S.A. § 4214(c). Appellee accordingly was permitted to debit Appellants' account upon discovering its mistake. Under these circumstances, Appellee did not breach its contractual agreement with Appellants.[16] Because Appellants were not entitled to judgment n.o.v., the trial court's denial of their motion was proper.

■ In their second allegation of error, Appellants assert that they are entitled to a new trial on the ground that the trial court abused its discretion by refusing to admit certain documents into evidence. "Questions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. The basic requisite for the admissibility of any evidence in a case is that it be competent and relevant." *Moran v. G. & W.H. Corson, Inc.,* 402 Pa.Super. 101, 586 A.2d 416, 428 (1991), *allocatur denied,* 529 Pa. 650, 602 A.2d 860 (1992). "Evidence is relevant if it tends to make a fact at issue more or less probable." *Hatfield v. Continental Imports, Inc.,* 530 Pa. 551, 558, 610 A.2d 446, 449 (1992). We will review the trial court's ruling with these considerations in mind.

Appellants sought to introduce copies of DB's documents which were sent to Schieffer. Appellants' believe that these materials were admissible as business records pursuant to the Uniform Business Records as Evidence Act, 42 Pa.C.S.A. § 6108. In determining whether evidence is admissible thereunder, this court has recognized:

It is not essential under the Uniform Business Records as Evidence Act to produce either the person who made the entries or the custodian of the record at the time the entries were made. Moreover, the law does not require that a witness qualifying business records even have a personal knowledge of the facts reported in the business record. As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence.

*Boyle v. Steiman,* 429 Pa.Super. 1, 631 A.2d 1025, 1032–1033 (1993), *allocatur denied,* 538

---

14. We note that Pennsylvania enacted Article 4A of the Uniform Commercial Code, 13 Pa.C.S.A. § 4A101– § 4A507, which deals with funds transfers. These provisions are inapplicable, however, because they were not in effect at the time the transfers in this case occurred. *See* Act of July 9, 1992, P.L. 507, No. 97, § 32 (providing that the act was effective in one year).

15. A depositary bank is "[t]he first bank to which an items is transferred for collection even though it is also the payor bank." 13 Pa.C.S.A. § 4105. A payor bank is "[a] bank by which an item is payable as drawn or accepted." *Id.*

16. We recognize that the instant case concerns an international wire transfer of funds drawn upon a letter of credit rather than a situation in which an item, i.e., an instrument for the payment of money, *see* 13 Pa.C.S.A. § 4104(a), is deposited into a bank account. Thus, the Bank Deposit and Collection Provisions of the UCC may not be directly applicable. To the extent the UCC is silent as to the parties' rights, the UCC may be supplemented by general principles of law and equity, including the law relative to mistake. 13 Pa.C.S.A. § 1103. As applied here, it is a well settled principle that money paid under a mistake of fact may be recovered from the recipient. *Gilberton Fuels, Inc. v. Philadelphia and Reading Coal and Iron Co.,* 342 Pa. 192, 196, 20 A.2d 217, 219 (1941). As previously determined, the money rightfully belonged to Paragon, not Appellants. Although Appellee initially credited the money to Paragon's account, the funds were later transferred at Peled's request. Review of the evidence demonstrates that Appellee mistakenly acceded to Peled's demand because it believed that Paragon had more than one account and that Peled was authorized to act on Paragon's behalf. (N.T. 5/24/95 at 391–394, 396 and 401). Because Peled induced the mistake and was not entitled to retain the proceeds, Appellee was justified in returning the funds to Paragon's account.

Pa. 663, 649 A.2d 666 (1994) (citations omitted).

■ As applied here, Appellants sought to introduce DB's records via Johannes Wulf. However, Wulf was employed by Schieffer and had no knowledge of the method of preparation and maintenance of DB's records. (N.T. 5/22/95 at 48–50). Rather, he was only able to testify that he received the documents from DB and kept them in his own file. *Id.* at 41–42.

Because Wulf was unable to proffer sufficient evidence concerning DB's method of preparation and maintenance of its records, the trial court did not err in excluding these documents. *Compare Boyle v. Steiman,* 631 A.2d at 1033 (sufficient foundation for admitting ledgers under business records exception existed where business owner's son was familiar with method of preparation and maintenance of records in his father's business); *American States Insurance Co. v. Maryland Casualty Co.,* 427 Pa.Super. 170, 628 A.2d 880, 890–891 (1993) (copies of insurance policies were properly admitted under business records exception where insurance agency executive provided sufficient information regarding the method of preparation and maintenance of his agency's records).

■ Even were we to assume, purely for the sake of argument, that the business records exception was satisfied here, the exclusion of the evidence was harmless. "To constitute reversible error, a ruling on evidence must be shown not only to have been erroneous but harmful to the party complaining. An evidentiary ruling which did not affect the verdict will not provide a basis for disturbing the [fact-finder]'s judgment." *Hart v. W.H. Stewart, Inc.,* 523 Pa. 13, 16, 564 A.2d 1250, 1252 (1989).

Exhibit 1 is a copy of the letter of credit issued by DB. Other similar documents were admitted which convey essentially the same information. Moreover, the existence of the letter and its terms, as originally issued, were not in dispute. Accordingly, the exclusion of this document did not prejudice Appellants.

■ We reach a similar conclusion regarding Exhibit 3, which contains the terms of the proposed amendment. For the reasons previously discussed, however, the existence and validity of the amendment is irrelevant because it was never accepted by the beneficiary. This document therefore would not have affected the trial court's decision even if it had been admitted.

■ The remaining exhibits are wholly irrelevant to the issues presented by this case. Exhibits 5 and 10 merely authorized Appellee to draw upon a particular branch of DB and advise that the documentary evidence complied with the terms of the letter of credit. Appellee's conduct in this regard was never at issue; rather, it is Appellee's disposition of the proceeds after they were drawn upon DB's account which is the subject of the parties' dispute.

■ Finally, exhibits 13 and 15 represented correspondence between DB and Appellee after Appellee recredited the letter of credit proceeds to Paragon's account. Although these documents refer to the purported amendment of the letter of credit, they do not bear on whether Paragon accepted the amendment or whether Appellee's transfer of the funds was improper. In light of the above analysis, the trial court's error in excluding the exhibits, if any, was harmless. Finding that Appellants are not entitled to the grant of any relief, we affirm the judgment.

Judgment affirmed.