J-A02017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANDREA AVERY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON CERCONE AND HARRY | : | No. 595 WDA 2020 |
| SPADAFORA | : | |

Appeal from the Judgment Entered June 10, 2020
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 13-022334

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.:                **FILED: SEPTEMBER 27, 2021**

Appellant Andrea Avery appeals from the judgment entered after the trial court denied her motion for post-trial relief.  Appellant contends that the trial court erred and abused its discretion when it denied Appellant's post-trial motion challenging the weight of the evidence and requesting a new trial with respect to damages.  After review, we affirm in part, vacate in part, and remand with instructions.

In an opinion filed on April 4, 2019, the trial court summarized the relevant facts and procedural history of this case as follows:

> In August of 2011 [Appellant], then forty-seven years old, was walking in the parking lot of her employer, Bayer Corporation, when a van struck her.  The impact knocked her off of her feet, and her head hit hard against the paved surface of the parking lot. She lost consciousness and was diagnosed with a brain concussion.

This proceeding, however, does not involve the August, 2011 pedestrian-vehicle collision. Instead, this proceeding involves an automobile collision that occurred approximately six months later, on February 1, 2012. [Appellant] attended the funeral mass for her aunt at 10:00 a.m. on February 1, 2012 at a church in Carnegie Borough. Afterwards, she drove her 2006 Mazda automobile near the rear of the funeral procession on Interstate 376 (more commonly called the Parkway West) towards the cemetery located in Moon Township. Defendant Harry Spadafora [(Appellee)[1]], on his way to buy paint at Home Depot, was driving a 2000 Silverado pick-up truck owned by Defendant Brandon Cercone behind [Appellant]. He did not realize he had entered the slower moving funeral procession, and the Silverado collided with the rear of the Mazda.

[Appellant] and [Appellee] then pulled their cars to the shoulder of the highway and had a brief conversation. [Appellee] admitted fault for the collision, apologized and asked [Appellant] if she was all right or wanted him to call the paramedics. [Appellant] responded that she was in a funeral procession, needed to get to the cemetery and that they could exchange contact information and speak later. [Appellant] then drove to the cemetery for the burial, and later that day she drove herself to a hospital emergency room. There, she reported having a bad headache and was prescribed a pain reliever. [Appellant] then drove to her home.

On February 1, 2012, when [Appellee] collided with [Appellant], she was still recovering from the brain concussion she received when the van struck her in August of 2011. [Appellant's] position at Bayer Corporation was a "financial analyst," which involved minimal physical labor. She worked for Bayer from her home after the van hit her, and had just returned to work at Bayer's office location on January 23, 2012. She had previously scheduled appointments in February for chiropractic treatment, vestibular therapy and with a neurologist monitoring the concussion. On February 22, 2012, Ms. Avery saw the neurologist, James Valeriano, M.D., who determined the collision with [Appellee] "substantially flared up problems" from the August, 2011

_____

[1] On appeal, this Court affirmed the judgment the judgment in favor of Mr. Cercone. *Avery v. Cercone*, 225 A.3d 873, 875 n.1 (Pa. Super. 2019). Accordingly, the only parties to the instant appeal are Appellant Avery and Appellee Spadafora.

concussion. [Appellant] was unable to work until February 23, 2012, when she was cleared to work, but for no longer than four hours per day. Bayer, however, could not accommodate that limitation, hence she did not return to work until she could do so on a full time basis, which occurred on April 5, 2012.

[Appellant] commenced this proceeding in November of 2013 by the filing of a praecipe for writ of summons. The complaint, which was filed in March of 2014, included a claim that Defendant Brandon Cercone negligently entrusted his vehicle to [Appellee]. Following Mr. Cercone's deposition in April of 2016, [Appellant] amended her complaint with the addition of a claim that Mr. Cercone was negligent or reckless to lend [Appellee] his pick-up truck when the brakes were malfunctioning. On September 5, 2018, the dispute was assigned to me for resolution by way of a jury trial.

. . . I supervised the selection of the jury for approximately a day and a half. Then, counsel argued numerous motions *in limine* with a court reporter transcribing the argument. My rulings on the motions included granting defendants' motion to preclude testimony of Tri-Rivers Consulting Service as well as granting [Appellee's] motion to exclude testimony as to Diffusion Tensor Imaging.

The trial began on September 6, 2018[,] and took nine days to complete. On the second day of the trial, Mr. Cercone was shown a signature on the defendants' verification of the answer and testified that it did not look like his signature, but that he could have signed it. Later that day, [Appellee] testified that some of the denials contained in the answer were inaccurate. The next day, outside the presence of the jury, [Appellant's] counsel asked me to strike the answer, direct a verdict against the defendants and preclude the defendants from presenting any cross-examination or defense for the remainder of the trial. I denied all of these requests.

Among the twenty-two live witnesses at the trial to testify on behalf of [Appellant] was expert witness Randall Benson, M.D., a neurologist based in Detroit, Michigan. Dr. Benson first examined and tested [Appellant] four years after the collision with [Appellee]. He testified that the collision with [Appellee] caused permanent injuries to [Appellant's] brain, including damage to her pituitary gland with resulting permanent 'growth hormone deficiency. He also testified that the collision with [Appellee]

caused [Appellant] to be likely to suffer from dementia beginning at the age of sixty-five. Mr. Cercone and [Appellee] had experts testify by videotape who disagreed with Dr. Benson, including neurologist David Lobas, M.D., who examined [Appellant] in May of 2017 and found no neurological deficits.[2]

Counsel for [Appellee in his] closing to the jury acknowledged responsibility for $8,500 in past lost earnings and the "flare up" of [Appellant's] concussion symptoms, but denied responsibility for any other losses. Based on testimony from an expert forensic economist and an expert life care planner, [Appellant's] counsel's closing to the jury requested $8,500 in past lost earnings, $517,100 in future lost earning capacity and $2,682,892 in future medical expenses for a total of approximately $3.2 million in economic damages. [Appellant's] counsel also asked the jury to compensate her for pain, suffering and other noneconomic losses from February 1, 2012 to the end of [Appellant's] life.

I instructed the jury to render its verdict by answering five written questions, the fourth of which was an itemization of damages.[fn1] During the deliberations, the jury sent me two notes with questions concerning damages, which I did my best to answer. The jury then rendered a verdict in favor of Mr. Cercone and against [Appellee] in the amount of $8,500 itemized as follows:

(a) Future medical expenses       $ 0

(b) Past lost earrings       $ 8,500.00

(c) Future lost earning capacity       $ 0

(d) Past, present, and future pain
and suffering, embarrassment and
humiliation and loss of enjoyment of life       $ 0

Total $ 8,500.00

[fn1] The first question asked if any of the defendants were negligent, the second question asked if the negligence was a factual cause of any harm to [Appellant], the third question asked for the percentage of negligence attributed to each defendant and the fifth question asked if the conduct

_____

2 However, as discussed below, Dr. Lobas also conceded that Appellant suffered an injury.

of any defendant was outrageous (the jury determined neither defendant's conduct was outrageous).

After I read this jury verdict in open court, [Appellee's] counsel immediately requested a conference at side bar. Believing this verdict could amount to reversible error on appeal, he asked if the jury could reconsider its award of $0 for pain and suffering. I agreed to have the jury do so and explained to the jury that it was "inconsistent" for someone to be injured, with $8,500 of lost earnings, yet have no pain and suffering "that would also logically be incurred when there is a loss of earnings." I asked the jury to deliberate again considering the instructions I provided on pain and suffering and other noneconomic losses. The jury deliberated again and returned with a verdict of $8,500 for past lost earnings and $10,000 for noneconomic losses for a total verdict of $18,500.

[Appellant] filed a motion for post-trial relief, which I denied. She then filed a timely appeal to the Superior Court of Pennsylvania . . . .

Trial Ct. Op., 4/4/19, at 1-5 (record citations omitted).

In this Court's disposition of Appellant's prior appeal, we held that the trial court invaded the province of the jury when it concluded that the weight of the evidence required an award for pain and suffering and directed the jury to continue deliberating. *See Avery v. Cercone*, 225 A.3d 873, 880 (Pa. Super. 2019) (stating "[t]he trial court gave a *de facto* directed verdict of at least $1 for pain and suffering"). We noted: (1) the jury was under no legal obligation to enter an award for Appellant for pain and suffering because the jury was free to reject both side's evidence of pain and suffering as a transient rub of life; (2) the trial court should have let the original verdict stand and waited to see if Appellant would file post-trial motions challenging the weight of the evidence; and (3) if no post-trial motion challenging the weight of the evidence was filed, then the original verdict of $8,500.00 would have

remained a consistent verdict. *Id.* Additionally, the prior panel of this Court noted that if Appellant had filed a post-trial motion, the trial court could have then determined if the verdict was against the weight of the evidence. *Id.* Accordingly, this Court concluded that the trial court erred by directing the jury to conduct further deliberations on this point to arrive at a dollar amount. *Id.* This court then affirmed the judgment in favor of Appellant, vacated the $18,500 judgment against Appellee, reinstated the original verdict against Appellee for $8,500 in lost wages, and remanded to permit Appellant to file a new post-trial motion challenging the weight of the evidence regarding the pain and suffering award, "because the trial court must resolve this question in the first instance." *Id.* at 875; *see also id.* at 883.

On remand, Appellant filed a post-trial motion and supporting brief challenging the weight of the evidence with respect to the award of zero dollars for pain and suffering and requested a new trial as to damages. Appellee filed a response to Appellant's motion, and on May 7, 2020, the trial court held a conference via telephone. On May 11, 2020, the trial court concluded that the jury's original verdict was not against the weight of the evidence and denied Appellant's post-trial motion. Order, 5/11/20. On June 10, 2020, Appellant filed a *praecipe* for the entry of judgment on the original verdict in the amount of $8,500 for lost wages and zero dollars for pain and suffering. This timely appeal followed.

On June 11, 2020, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b),

- 6 -

and Appellant filed her Rule 1925(b) statement on June 30, 2020. The trial court filed its Rule 1925(a) opinion on August 7, 2020.

On appeal, Appellant presents the following issues:

1. A jury is required to compensate a plaintiff for all damages related to injuries resulting from a defendant's negligence. On remand, the trial court committed reversible error by denying [Appellant's] motion for a new trial. The trial court found that it did not shock the court's sense of justice that the jury did not award any damages for: (1) [Appellant's] past, present and future pain and suffering damages; (2) [Appellant's] loss of future earning capacity; and (3) future medical expenses. However, the jury determined, and the evidence showed, that [Appellant] did suffer a compensable injury as a result of [Appellee's] negligence, since the jury awarded [Appellant] $8,500, representing the amount of lost past wages for the time that [Appellant] was unable to work due to the pain and suffering resulting from her injuries.

2. A jury award that completely disregards the evidence presented at trial on the question of damages, bears no reasonable relationship to the proven damages, requiring the award of a new trial. The jury determined that [Appellant] suffered no damages for: (1) [Appellant's] past, present and future pain and suffering damages; (2) [Appellant's] loss of future earning capacity; and (3) future medical expenses. The jury's determination demonstrates that the jury rejected uncontroverted evidence that [Appellant] suffered or will suffer damages for: (1) past, present and future pain and suffering; (2) loss of future earning capacity; and (3) future medical expenses. Accordingly, [Appellant] is entitled to a new trial on all elements of damages.

3. A *Frye*[3] hearing is required when the admissibility of expert scientific evidence is challenged. *Frye* only applies to

---

[3] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). "The purpose of a *Frye* hearing is to permit a trial court to hear from experts in the relevant scientific field whether an expert's methodology is generally accepted." *Walsh v. BASF Corporation*, 191 A.3d 838, 846 (Pa. Super. 2018) (footnote omitted), *aff'd*, 234 A.3d 446 (Pa. 2020).

determine if the relevant scientific community has generally accepted the principles and methodology the scientist employs. [Appellee] challenged [Appellant's] expert neurologist's use of DTI (Diffuse Tensor Imaging) to confirm the diagnosis of brain injury, arguing that radiologists assert the use of DTI is unreliable. The trial court struck the use of DTI without a *Frye* hearing, without the presentation of any evidence, instead, relying upon argument based upon differing fields of science since a radiologist is not in the same field of science as a neurologist.

4. A party is permitted to provide evidence of bias in order for the jury to determine whether the opposing party and their expert have a significant pattern of compensation that would support a reasonable inference that the witness might be inclined to slant his testimony. Instantly, [Appellee] hired Tri-Rivers Consulting who had a long-standing and significant financial relationship with [Appellee's] counsel. Tri-Rivers provided an expert to testify for [Appellee]. [Appellant was] prohibited from presenting evidence of the extent and nature of the business relationship between Tri-Rivers and [Appellee's] counsel.

Appellant's Brief at 5-6 (some formatting altered).

## New Trial/Weight of the Evidence

Appellant first contends that the trial court abused its discretion in denying her post-trial motion for a new trial based on the weight of the evidence. Appellant reiterates that Appellee admitted fault and contends that the uncontroverted evidence established that she endured pain and suffering from the injuries sustained in the accident. Appellant's Brief at 29-49. Appellant notes that the jury was not permitted to disregard uncontroverted medical evidence. *Id.* at 29. Further, Appellant argues that her claim for pain and suffering is supported by the evidence and by the fact that the jury awarded her $8,500, representing wages that were lost due to her injuries;

therefore, the verdict bore no rational relationship to the evidence. *Id.* at 30-43. Additionally, Appellant points to the fact that Appellee's counsel admitted in his closing argument that Appellant was entitled to an award for pain and suffering as further support for her argument that the verdict was against the weight of the evidence. *Id.* at 41-47. Accordingly, Appellant alleges that it was error for the jury to award zero dollars for pain and suffering, and she claims that she is entitled to a new trial on the issue of damages. *Id.* at 51.

Appellee asserts that there was no error in the jury awarding Appellant $8,500 for lost wages but awarding her no damages for pain and suffering. Appellee's Brief at 17. Appellee argues that the jury is the finder of fact, and that the courts must guard against usurping the role of the jury. *Id.* Furthermore, Appellee asserts that the jury was free to believe all, part, or none of the evidence presented, and that the jury was permitted to conclude that Appellant's injuries were a transient "rub of life" for which pain and suffering compensation is not warranted. *Id.* at 19. Appellee points out that Appellant had a prior concussion and that the evidence did not support a finding that the second accident caused Appellant to endure compensable pain and suffering. *Id.* at 27-29.

Our standard of review for an order denying a post-trial motion for a new trial that challenges the weight of the evidence is as follows:

> The power to grant or deny a new trial lies inherently with the trial court, and we will not reverse its decision absent a clear abuse of discretion or error of law which controlled the outcome of the case. . . . A new trial based on weight of the evidence issues will not be granted unless the verdict is so contrary to the evidence as to

shock one's sense of justice; a mere conflict in testimony will not suffice as grounds for a new trial. It is beyond argument that the fact-finder is free to accept or reject the credibility of both expert and lay witnesses, and to believe all, part or none of the evidence. . . . [H]owever, . . . a jury is not free to ignore an obvious injury.

*Casselli v. Powlen*, 937 A.2d 1137, 1138-39 (Pa. Super. 2007) (citations omitted and formatting altered). Moreover,

As a general proposition victims indeed must be compensated for all that they lose and all that they suffer from the tort of another. In that proposition is subsumed that they have suffered loss and that compensable pain was inflicted.

We have held and hold now that there are injuries to which human experience teaches there is accompanying pain. Those injuries are obvious in the most ordinary sense: the broken bone, the stretched muscle, twist of the skeletal system, injury to a nerve, organ or their function, and all the consequences of any injury traceable by medical science and common experience as sources of pain and suffering. Pain of varying degree, may indeed follow small injury and be greater in its consequence than the initial blow. It may aggravate existing defects of the person, exploding latent diseases or precipitate, into present pain, what otherwise might have passed or been long delayed, absent the immediate injury.

*Id.* at 1139 (citation omitted and formatting altered). "Where a defendant concedes liability and his or her expert concedes injury resulting from the accident that would reasonably be expected to cause compensable pain and suffering, the jury's verdict is against the weight of the evidence where it finds for the defendant." *Id.* at 1140 (citation omitted and formatting altered). Moreover, it is well settled that the award of damages must bear a rational relationship to the uncontroverted testimony, and where the "jury's verdict has no basis in the uncontroverted evidence . . . as to be grossly inadequate

that verdict should be vacated." ***Kiser v. Schulte***, 648 A.2d 1, 6-7 (Pa. 1994). This Court has held:

> Where the verdict bears a reasonable relationship to the damages proved and also comprehends the jury's resolution of disputed liability, the court cannot simply substitute its judgment for that of the jury[.] The mere fact that a verdict is low does not necessarily mean that it is inadequate[.]
>
> [C]ompromise verdicts are both expected and allowed. The compromise may arise out of damages or negligence or the balance of evidence concerning either or both. However, a verdict is not a proper compromise when it represents a retreat from the responsibility for decision. The compromise is not a proper one when it derives from misunderstanding, passion, prejudice or any other improper motive or factor. A verdict which arbitrarily allows nothing for pain and suffering, where some pain and suffering must have existed, cannot be permitted to stand.

***Alexander v. Knight***, 177 A.2d 142, 146 (Pa. Super. 1962) (citations omitted and formatting altered).

It is undisputed that prior to the accident at issue (second accident), Appellant had suffered an earlier concussion that had not completely healed. Trial Ct. Op., 4/4/19, at 1; R.R. at 1714a.[4] A neurologist, James Valeriano, M.D., one of Appellant's treating physicians, testified that the second accident caused injuries to Appellant and "substantially flared up" Appellant's prior concussive injuries. R.R. at 1714a. After the second accident, Appellant was diagnosed with an injury to her optic nerve, pituitary dysfunction, and cervical strain and concussion. ***Id.*** at 2597a, 2464a, 2356a. Behavioral neurologist Randall Benson, M.D., testified that enduring two concussions in six months

---

[4] For the parties' convenience, we refer to the reproduced record.

- 11 -

decreased the possibility of a positive outcome. *Id.* at 1590a. Dr. Benson testified to a reasonable degree of neurological certainty that the second accident caused Appellant suicidal thoughts, mood changes, an increased risk of dementia, and damaged Appellant's pituitary gland requiring hormone replacement therapy. *Id.* at 1590a-1605a. Dr. Benson diagnosed Appellant as permanently impaired due to the injuries caused in the second accident. *Id.* at 1671a.

It is undisputed that the injuries caused Appellant to miss work, and the jury awarded Appellant damages for her lost wages. Trial Ct. Op., 4/4/19, at 4. Importantly, Appellee's expert in neurology, David Lobas, M.D., noted that Appellant suffered a prior concussion, and he conceded that the second accident injured Appellant. R.R. at 2600a. Dr. Lobas testified: "I think that she experienced an injury, but I can't -- there's nothing here in this note that gives me any more data to -- to comment about a about that further. I -- I mean, her symptoms are worse. That's what I would take away from this." *Id.* at 2600a-01a. Indeed, Dr. Lobas agreed that Appellant's injuries were worsened by the second accident. *Id.* at 2601a. Additionally, Appellee's expert neuroradiologist Vikas Agarwal, M.D. testified that after reviewing Appellant's MRI studies he found no acute intercranial abnormalities, however, he concluded that there is a medical probability that Appellant had a mild traumatic brain injury. *Id.* at 2614a-15a.

Despite the uncontroverted evidence of a brain injury, the jury awarded damages for lost wages but awarded zero dollars for pain and suffering

resulting from the injuries. The jury's conclusion is errant and contrary to human experience. *See Casselli*, 937 A.2d at 1141. Although a commonplace injury such as a bruise may be categorized by the finder of fact as a "transient rub of life," *see Kennedy v. Sell*, 816 A.2d 1153, 1157 (Pa. Super. 2003), the jury is not free to ignore uncontroverted evidence and an obvious injury. *See Casselli*, 937 A.2d at 1141. We conclude that the trial court abused its discretion when it denied Appellant's motion for a new trial on damages based on the weight of the evidence. Accordingly, we vacate the judgment entered on the jury verdict and remand for a new trial for the reasons discussed herein.

**Damages**

Next, we must determine the parameters of Appellant's new trial. In her second issue, Appellant argues that because the jury disregarded uncontroverted evidence, she is entitled to a new trial on all elements of damages including pain and suffering, loss of earning capacity, and future medical expenses. Appellant's Brief at 51-62. Appellant contends that she is entitled to a new trial on all aspects of damages despite the trial court's assertion that Appellant waived her claims for loss of earning capacity and future medical expenses. *Id.* at 53; *see also* Trial Ct. Op., 8/7/20, at 6, n.2 (opining that Appellant failed to challenge the jury's award of zero dollars for loss of earning capacity and future medical expenses in her initial post-trial motion resulting in waiver of these claims pursuant to Pa.R.C.P. 227.1(b)(2) and Pa.R.A.P. 1925(b)(4)(vii)). Appellant states that she requested "a new

- 13 -

trial on damages in toto" and preserved her claim for a new trial on all aspects of damages. *Id.* at 54.

Appellee agrees with the trial court that Appellant waived her claims relative to loss of earning capacity and future medical expenses. Appellee's Brief at 31. Moreover, Appellee asserts that if this Court concludes that Appellant is entitled to a new trial on the issue of damages, it should be limited to damages for pain and suffering only. *Id.* at 34.

In order to determine the scope of trial following remand, we must determine whether Appellant waived her claims for a new trial with respect to loss of earning capacity and future medical expenses. Rule 227.1 provides in relevant part as follows:

> (b) Except as otherwise provided by Pa.R.E. 103(a), post-trial relief may not be granted unless the grounds therefor,
>
> (1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and
>
> > *Note*: If no objection is made, error which could have been corrected in pre-trial proceedings or during trial by timely objection may not constitute a ground for post-trial relief.
> >
> > Pa.R.E. 103(a) provides that the specific ground for an overruled objection, or the substance of excluded evidence, need not be stated at or prior to trial, or without having made an offer of proof, if the ground of the objection, or the substance of the evidence sought to be introduced, was apparent from the context.
>
> (2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. **Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds**.

- 14 -

Pa.R.C.P. 227.1(b) (emphasis added). Additionally, Rule 1925(b)(4)(vii) states that issues not included in a Rule 1925(b) statement are waived.

In Appellant's initial post-trial motion, she claimed only that the award of zero dollars for pain and suffering was against the weight of the evidence. R.R. at 660a-662a. Appellant never mentioned loss of earning capacity and future medical expenses in her initial post-trial motion. Moreover, when this Court remanded the matter to permit Appellant to file post-trial motions, the panel instructed that post-trial motions were limited to pain and suffering only. *See Avery*, 225 A.3d at 875 (remanding "for the filing of new post-trial motions on a weight-of-the-evidence claim regarding the **pain and suffering award**" (emphasis added)). Additionally, we clarified:

> [Appellant] may, if she wishes, renew her post-trial motions for a new trial on the grounds that the jury's original award of $0 for pain and suffering was against the weight of the evidence, such that it should shock the conscience of the trial judge who presided over the jury trial.[fn5]
>
>> [fn5] If the trial judge determines a new trial on damages is warranted for pain and suffering, the issue remains whether the award of $8,500 for lost wages may nevertheless stand. A panel of this Court recently decided that the unchallenged portion of a damages award stands. *See Mader* [*v. Duquesne Light Co.*, 199 A.3d 1258, 1270 n.2 (Pa. Super. 2018) (*Mader I*) *aff'd*, 241 A.3d 600 (Pa. 2020)]. *Mader* [*I*] currently binds the trial court on that point; however, the Supreme Court of Pennsylvania has granted an allowance of appeal and is reviewing this issue. *Id.*, 217 A.3d 193 (Pa. 2019).

*Avery*, 225 A.3d at 881.

- 15 -

In her post-trial motion following remand, Appellant recognized that she was limited to filing a post-trial motion with respect to pain and suffering only and recited the above-quoted language from this Court's prior decision. R.R. at 2680a. Nevertheless, Appellant expanded upon this Court's limited remand, and requested a new trial on all aspects of damages in the subsequent post-trial motion following remand. *Id.* at 2681a-86a.

Accordingly, pursuant to Pa.R.C.P. 227.1(b) and Pa.R.A.P. 1925(b)(4)(vii)), Appellant waived her claims with respect to loss of earning capacity and future medical expenses when she failed to properly raise and preserve these claims in her initial post-trial motion and appeal. Moreover, as noted in this Court's prior decision, at the time of that opinion, the decision in *Mader I* provided that the unchallenged portion of an award of damages remains undisturbed. *Avery*, 225 A.3d at 881.

Subsequently, our Supreme Court affirmed this Court's decision in *Mader I*. *Mader v. Duquesne Light Co.*, 241 A.3d 600 (Pa. 2020) (*Mader II*). In *Mader II*, our Supreme Court addressed this issue as follows:

> Duquesne Light argues that Mader waived his right to seek a new trial for past and future medical expenses, offering that, while Mader requested a new trial on damages, and raised arguments about lost wages and pain and suffering, he failed to set forth any reasoning or argument as to why the jury's award regarding past and future medical expenses was improper, citing Pa.R.C.P. 227.1 (requiring in a post-trial motion separate reasons for each type of relief sought). Mader responds that the waiver issue is not encompassed within the issues upon which we granted allowance of appeal, was properly resolved by both the trial court and the Superior Court's below against Duquesne Light, and, in any event, he preserved his right to a new trial on past and future medical

- 16 -

expenses by seeking a new trial limited to damages, and in his reply brief in the trial court arguing for a new trial on all damages. We too decline to find waiver in these circumstances. While, in his post-trial motion, Mader focused on the lack of damages for pain and suffering, he argued globally for a new trial on all damages, and, at least in certain post-trial filings, sought from the trial court an award of a new trial for all damages, and argued against the award of a new trial on only certain categories of damages.

*Mader II*, 241 A.3d at 610 n.5.

In *Mader II*, our Supreme Court declined to find waiver of any aspects of damages because the appellant in that case "argued globally" for a new trial on all damages. However, the instant case is distinguishable. As discussed above, in her initial post-trial motion, Appellant did not request a new trial "globally." Rather, Appellant requested a new trial relative to pain and suffering only, and this Court remanded to allow Appellant to file a post-trial motion with respect to pain and suffering only. *See Avery*, 225 A.3d at 875, 881. Moreover, the trial court specifically held that Appellant's claims regarding loss of earning capacity and future medical expenses were waived. Trial Ct. Op., 8/7/20, at 6, n.2. Accordingly, although we remand this matter for a new trial, the new trial shall be limited to damages for pain and suffering only.

### *Frye* Hearing

In her third issue, Appellant asserts that the trial court abused its discretion when it precluded Appellant's expert neurologist, Dr. Randall Benson, from testifying regarding the use of Diffuse Tensor Imaging (DTI) to

- 17 -

confirm the diagnosis of a brain injury. Appellant's Brief at 63-64. Appellant argues that the trial court erred in making this ruling without holding a *Frye* hearing. *Id.* at 65-66. Appellant contends that the trial court erred in its reliance on Appellee's argument and in concluding that radiology and not neurology is the field in which DTI must be accepted. *Id.* at 69-70.

Appellee asserts that the trial court properly granted Appellee's motion *in limine* to preclude Dr. Benson from testifying relative to his use of DTI. Appellee's Brief at 39-40. Appellee contends that DTI is a controversial and unreliable diagnostic tool, and Appellee asserted that the Radiological Society of North America issued a statement providing that there is insufficient evidence to support the routine clinical use of these neuroimaging techniques for diagnosis or prognostication. *Id.* at 43-44. Appellee claims that because there is a lack of general acceptance of DTI for diagnostic purposes, DTI does not satisfy the *Frye* standard, and the trial court correctly concluded that Dr. Benson's testimony relative to DTI was inadmissible. *Id.* at 46.

A motion *in limine* is a pretrial mechanism to obtain a ruling on the admissibility of evidence, and it enables the trial court to "weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury." *Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa. Super. 2014) (*en banc*) (citation omitted). "A trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review." *Id.* (citation and quotation marks omitted).

Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Id.* at 690-691 (citations omitted and formatting altered). Indeed, "[i]n order to find that the trial court's evidentiary rulings constituted reversible error, such rulings must not only have been erroneous but must also have been harmful to the complaining party." *Oxford Presbyterian Church v. Weil-McLain Co.*, 815 A.2d 1094, 1100 (Pa. Super. 2003) (citations and quotation marks omitted). An appellant "must therefore show error in the evidentiary ruling and resulting prejudice, thus constituting an abuse of discretion by the lower court." *Id.* (citations and quotation marks omitted). An evidentiary ruling which did not affect the verdict will not provide a basis for disturbing the jury's judgment. *Peled v. Meridian Bank*, 710 A.2d 620, 626 (Pa. Super. 1998) (citation omitted).

Regarding scientific evidence and expert opinions, our Rules of Evidence provide:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

- 19 -

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

The proponent of expert scientific evidence bears the burden of establishing all of the elements for its admission under Pa.R.E. 702, which includes showing that the rule in [*Frye*] is satisfied. *See* [*Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1045 (Pa. 2003)]. *Frye*, which is now embodied in Pa.R.E. 702(c), instructs that the court should not admit scientific evidence during trial unless the underlying methodology has gained general acceptance in the scientific community. *See Commonwealth v. Topa*, 369 A.2d 1277, 1281-82 (Pa. 1977). "*Frye* does not apply to every time science enters the courtroom . . . *Frye* does apply, however, where an expert witness employs a novel scientific methodology in reaching his or her conclusion." *Folger ex rel. Folger v. Dugan*, 876 A.2d 1049, 1058 (Pa. Super. 2005) (*en banc*) (citations omitted). One method to assess a *Frye* motion is to conduct a *Frye* hearing, although a hearing is not mandatory.

*Buttaccio v. American Premier Underwriters, Inc.*, 175 A.3d 311, 315 (Pa. Super. 2017).

After review, pursuant to the standard set forth in *Parr*, we cannot conclude that the trial court's ruling on Appellee's motion *in limine* was reversible error because we do not find that Appellant has established prejudice. *See Parr*, 109 A.3d at 691. As noted, Appellant argues that Dr. Benson sought to rely on DTI to **confirm** his diagnosis of a traumatic brain injury. Appellant's Brief at 63-64, 68. However, Appellant does not assert how this evidentiary ruling impacted the verdict or how she was prejudiced by

the ruling on the motion *in limine*.[5]   Accordingly, we conclude that Appellant

has failed to establish prejudice, and she is entitled to no relief on this claim

of error.[6]  ***See Oxford Presbyterian Church***, 815 A.2d at 1100; ***Peled***, 710

A.2d at 626.

## Bias

In her final issue, Appellant contends that the trial court abused its

discretion when it granted Appellee's motion *in limine* precluding Appellant

from presenting evidence of bias and the nature of Tri-Rivers Consulting's (Tri-

Rivers) relationship with Appellee's counsel.  Appellant's Brief at 71.  Appellant

asserts that she should have been permitted to provide evidence of bias to

the jury illustrating that Tri-Rivers and Appellee's counsel have a pattern of

compensation supporting an inference that the witness might be inclined to

provide biased testimony.  ***Id.*** at 74.

Appellee argues that the trial court properly granted the motion *in limine*

to preclude Appellant from questioning a representative from Tri-Rivers.

Appellee emphasizes that Appellant was not prevented from questioning Dr.

---

[5] As noted above, Appellee's experts conceded that Appellant sustained a traumatic brain injury.  ***See*** R.R. at 2600a-01a, 2614a-15a.

[6] In Appellant's Reply Brief addressing a separate issue on damages, she does mention generally that the preclusion of DTI evidence negatively impacted the damages that stem from a permanent brain injury.  Appellant's Reply Brief at 16-17.  However, this claim was not asserted in Appellant's initial brief where Appellant's focus was utilizing DTI to confirm a diagnosis, and we are constrained to point out that Appellant cannot raise new issues in a reply brief. ***Reginelli v. Boggs***, 181 A.3d 293, 307, n.15 (Pa. 2018); Pa.R.A.P. 2113(a). Moreover, as stated above, Dr. Benson was not precluded from, and did in fact testify that Appellant suffered permanent injuries.  R.R. at 1671a.

Lobas regarding bias or his compensation for testifying. Appellee's Brief at 46-47. Appellee asserts that Tri-Rivers was not an expert, did not have a medical license, and it did not author any report. *Id.* at 47. Moreover, Dr. Lobas is not a shareholder or employee of Tri-Rivers. *Id.* Appellee contends that the trial court precluded Appellant from calling Tri-Rivers as a witness because the testimony would have been cumulative and a distraction. *Id.* at 50.

As this issue involves the review of an order granting a motion *in limine*, our standard of review remains the same as the prior issue. *See Parr*, 109 A.3d at 690-91 (stating that trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review, and questions concerning the admissibility of evidence lie within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion).

The trial court addressed Appellant's claim of error as follows:

[Appellant] contends that I made an error by granting [Appellee's] motion *in limine* to preclude testimony of Tri-Rivers Consulting Service. [Appellee's] attorneys contacted Tri-Rivers Consulting Service, which is an expert referral service, to refer them to an expert medical witness to examine [Appellant] and potentially testify as to his or her findings at the trial. Tri-Rivers referred neurologist David Lobas, M.D. to [Appellee's] attorneys, and Dr. Lobas examined [Appellant] on May 19, 2017, and later testified as to his findings by way of a videotaped deposition. During his direct examination that was viewed by the jury, Dr. Lobas testified that between five and ten percent of his practice is litigation related and that Tri-Rivers charged [Appellee] $925 for his record review, $1,695 for the examination of [Appellant] (Dr. Lobas testified to receiving $847 of this from Tri-Rivers) and $2,990 for

his deposition testimony. During the cross-examination, Dr. Lobas testified concerning how many "independent medical evaluations" he did per month, the percentage of "record reviews" that he performed on behalf of [Appellee] and the percentage of his expert work performed for the defendants' law firms. Such information on expert witnesses is discoverable and also may be used at trial to demonstrate partiality of an expert witness. **_See Cooper v. Schoffstall_**, 905 A.2d 482 (Pa. 2006); **_see also J.S. v. Whetzel_**, 860 A.2d 1112 (Pa. Super. 2004).

[Appellant], however, believing such information also could be used at trial to demonstrate the partiality of an expert referral service, served a subpoena for the appearance at trial of Tri-Rivers Consulting Service. **_Cooper v. Schoffstall_** is premised on the concept that an expert witness with a pattern of compensation could slant his or her testimony in light of the substantial financial incentives. But no Pennsylvania court ruling suggests extension of this concept to an entity that can provide no expert testimony and serves exclusively as a referral service. In addition, the minimal probative value of [Appellant] calling a referral service for the sole purpose of demonstrating its bias is outweighed by the danger of the Jury focusing only on its credibility instead of the credibility of Dr. Lobas. **_See_** Pa.R.E. 403; **_see also Flenke v. Huntington_**, 111 A.3d 1197 (Pa. Super. 2015). Testimony by Tri-Rivers also would be needlessly cumulative of the partiality demonstrated as to Dr. Lobas. **_Id._** Therefore, I correctly granted [Appellee's] motion *in limine* and precluded any testimony from Tri-Rivers.

Trial Ct. Op., 4/4/19, at 5-6 (some formatting altered).

After review, we agree with the trial court and discern no abuse of discretion. As the trial court stated, Tri-Rivers is a consulting service, not an expert. Appellant, sought to portray Dr. Lobas as a biased professional witness and had the opportunity and, in fact, did question Dr. Lobas eliciting testimony concerning his fees and income gained from testifying at trial. Therefore, testimony regarding bias from a representative of Tri-Rivers would have been cumulative of the testimony provided by Dr. Lobas.

Appellant cites **Cooper**, to support its assertion that a party is permitted to seek information concerning possible bias of an opposing party's witness. Appellant's Brief at 71. In **Cooper**, our Supreme Court recognized that a "pattern of compensation in past cases" may raise an inference that the witness may slant his testimony to ensure he is hired as a witness in future cases. **Cooper**, 905 A.2d at 494 (citation and quotation marks omitted). The **Cooper** Court concluded that the plaintiff showed cause and should be permitted to **seek supplemental discovery** of financial records of a non-party expert medical witness to facilitate an inquiry into potential bias. **Id.** at 494-95. However, **Cooper** did not compel a non-party to appear and testify relative to bias.

Appellant does not argue that she was precluded from seeking discovery. Rather, Appellant sought to present to the jury testimonial evidence of bias. Appellant's Brief at 75. However, Appellant was not precluded from attempting to portray Dr. Lobas as a biased witness. Indeed, Appellant questioned Dr. Lobas on this subject.

As stated above, Tri-Rivers is not an expert; it is a referral service. In his motion *in limine*, Appellee asserted that referral services such as Tri-Rivers are used by both defense and plaintiff's attorneys. R.R. at 492a; **see also** Appellee's Brief at 49. Moreover, Appellant was permitted to question Dr. Lobas relative to the fees he received for his services and was not precluded from attempting to establish that Dr. Lobas was a biased expert defense witness during cross-examination. We find that there was no abuse of

- 24 -

discretion in the trial court's conclusion that any information elicited from Tri-Rivers would have been cumulative of the direct and cross-examination testimony of Dr. Lobas. *See Parr*, 109 A.3d at 690. Accordingly, we conclude that no relief is due to Appellant on this issue.

For the reasons set forth above, we vacate the judgment entered on the verdict with respect to damages for pain suffering and remand for a new trial limited to damages for Appellant's pain and suffering only. We affirm the remainder of the judgment.

Judgment affirmed in part and vacated in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2021